## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GRACHYA KAZANCHYAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RETROPHIN, INC., MARTIN SHKRELI, MARC L. PANOFF, and JEFFREY PALEY,<br><br>Defendants. | Case No.      JUDGE CASTE<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**14 CV   8376** |

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Grachya Kazanchyan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Retrophin, Inc. ("Retrophin" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants (defined herein) and their affiliates, who purchased the securities of Retrophin from March 27, 2014 to September 30, 2014, inclusive (the "Class Period") seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Defendant Retrophin, Inc., a biopharmaceutical company, focuses on the development, acquisition, and commercialization of therapies for the treatment of serious, catastrophic, or rare diseases. It sells Chenodal, a synthetic oral form of chenodeoxycholic acid for the treatment of radiolucent stones in well-opacifying gallbladders, and Vecamyl, for the treatment of hypertension.

3.      The Company also is developing Syntocinon Nasal Spray, an oxytocin nasal spray product for aiding milk let-down, as well as for the treatment of schizophrenia and autism; and RE-034, a synthetic hormone analogue that is composed of the first 24 amino acids of the 39 amino acids contained in the naturally occurring adrenocorticotrophic hormone for the treatment of infantile spasms and nephrotic syndrome.

4.      In addition, the Company intends to obtain FDA approval of Chenodal for the treatment of cerebrotendinous xanthomatosis; and for the treatment of patients with biliary cirrhosis.

5.      Retrophin is based in New York, New York and its shares trade on the NASDAQ Exchange under the ticker symbol "RTRX."

6.      On April 14, 2014, the Company filed a Definitive Proxy on Form 14A with the SEC (the "Proxy"), which attached as an exhibit Retrophin's 2014 Incentive Compensation Plan (the "Plan"). According to the Proxy, on March 20, 2014, the Board of Directors approved the Plan, which would be effective May 9, 2014 subject to stockholder approval at the 2014 Annual Meeting. The Plan covers stock options, stock appreciation rights, restricted stock and restricted stock units, deferred stock, performance units and annual incentive awards.

7.      The Plan also provides that the compensation and talent development committee of the Board of Directors (the "Compensation Committee") will administer the Plan, and individuals eligible for awards under the Plan are determined by the Compensation Committee in its discretion and are limited to the officers, employees and Consultants of the Company and its subsidiaries and non-employee directors of the Company. The Compensation Committee shall also have the sole authority to select the Plan's participants, make awards in such amounts and in such forms as it deems advisable, impose such restrictions, terms and conditions as it deems appropriate, or correct such technical defects or any inconsistencies in the Plan or any agreement made thereunder. The Plan shall terminate on May 9, 2024.

8.      On May 13, 2014, the Company filed a Form 8-K with the SEC announcing that Retrophin stockholders voted to approve the Company's 2014 Incentive Compensation Plan at the 2014 Annual Meeting on May 9, 2014.

9.      However, throughout the Class Period, Defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance. Specifically, during the Class Period, Defendants made

false and/or misleading statements and/or failed to disclose that: (i) Retrophin's founder and Chief Executive Officer was committing stock-trading irregularities during the Class Period; (ii) said irregularities included grants of Retrophin stock to certain recipients in the absence of a shareholder-approved distribution plan, failures to disclose stock grants, and grants of stock in violation of the Company's Incentive Compensation Plan; (iii) as a result of the above, Defendants committed violations of the Company's Incentive Compensation Plan and other securities rules, including NASDAQ Listing Rules; and (iv) the Company's financial statements and other SEC filings were materially false and/or misleading at all relevant times.

10.    On September 16, 2014, after the close of trading, the Company issued a press release and filed a Form 8-K with the SEC announcing that on September 15, 2014, it had reached an agreement with its Chief Financial Officer, Marc Panoff, pursuant to which Mr. Panoff's employment with the Company will terminate, effective as of February 28, 2015. Also, the Company announced that on September 10, 2014, Jeffrey Paley, MD abruptly stepped down as a member of the Board of Directors.

11.    As a result of this news, shares of Retrophin fell $1.03 or over 8%, on unusually heavy trading, to close at $11.46 on September 17, 2014.

12.    On September 30, 2014, after the close of trading, the Company issued a press release announcing that its Board of Directors terminated its Chief Executive Officer, Martin Shkreli, effective immediately, and appointed Stephen Aselage as interim Chief Executive Officer.

13.    As a result of this news, shares of Retrophin fell $0.40 or almost 4.5%, on unusually heavy trading, to close at $8.62 on October 1, 2014.

14.     On October 2, 2014, an article was published in *Bloomberg Businessweek* stating that Retrophin fired Shkreli because he engaged in stock-trading irregularities and other violations of securities rules. The article stated, in part:

> According to people familiar with the company, the board concluded that Shkreli had committed stock-trading irregularities and other violations of securities rules. The violations included grants of Retrophin stock to certain recipients in the absence of a shareholder-approved distribution plan, failures to disclose stock grants, and grants of stock above limits imposed by the plan that was eventually put in place, the people said. Shkreli has not returned phone messages seeking comment.

15.     Finally, October 3, 2014, the Company announced the grant of inducement awards to 66 employees, as well as the grant of an inducement award to Alvin Shih, M.D., the Company's Executive Vice President of Research and Development.

16.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

17.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

18.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act, 15 U.S.C. § 78aa.

19.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b), as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

20.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

21.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the securities of Retrophin at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

22.     Defendant Retrophin is a Delaware corporation its executive offices are located at 777 Third Avenue, 22nd Floor, New York, NY 10017.

23.     Defendant Martin Shkreli ("Shkreli") has served as the Company's founder and a member of the Board of Director, and was at all relevant times until his termination on September 30, 2014, the Company's Chief Executive Officer ("CEO").

24.     Defendant Marc L. Panoff ("Panoff") served as the Company's Chief Financial Officer ("CFO") until the termination of his employment on September 15, 2014, effective as of February 28, 2015.

25.     Defendant Jeffrey Paley has served as the Company's Director and Chief Medical Officer as all relevant times.

26.     Defendants referenced above in ¶¶ 23 – 25 are sometimes referred to herein, collectively, as the "Individual Defendants."

27.     Defendant Retrophin and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     Retrophin is a biotechnology company focused on discovering and developing treatments for rare and life-threatening diseases. The Company is currently developing

6

treatments for Focal Segmental Glomerulosclerosis (FSGS), Pantothenate Kinase-Associated Neurodegeneration (PKAN), Duchenne Muscular Dystrophy and other catastrophic diseases.

29.     The Company was founded by defendant Shkreli in February 2011, who had previously worked at several hedge funds specializing in the healthcare industry. Currently, Shkreli owns over 11% of the Company.

## Materially False and Misleading
## Statements Issued During the Period

30.     On March 27, 2014, the first day of the Class Period, the Company issued a press release announcing financial and operating results for year ended December 31, 2013. Retrophin reported a net loss of $33.8 million for the year ended December 31, 2013. During the same period in 2012, Retrophin recorded a net loss of $30.3 million. Loss from operations was $24 million for the year ended December 31, 2013, compared to a loss from operations of $30.3 million for the year ended December 31, 2012. Retrophin's balance sheet at December 31, 2013 included approximately $6.1 million in cash, cash equivalents and marketable securities and no debt.

31.     On March 28, 2014, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Shkreli, Panoff, and Paley, and reiterated the Company's previously announced annual financial results and financial position. In addition, the Form 10-K contained certifications signed pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Shkreli and Panoff, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     Specifically, the SOX certification stated:

I, Martin Shkreli, certify that:

1. I have reviewed this Quarterly Report on Form 10-K of Retrophin, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period III which this report is being prepared;

> b) designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

> c) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

> d) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the

registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a)  all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b)  any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

The Company's Form 10-K also included a substantially similar SOX certification, signed by CFO Panoff.

33.     The 2013 Form 10-K also stated:

*Employee Equity Issuance*

Subsequent to year end, we issued 400,000 shares of restricted common stock to three officers and 1,210,000 options to purchase shares of our common stock to four officers and other employees.

34.     On April 4, 2014, the Company filed a Form 8-K with the SEC announcing the termination of its auditor, Marcum LLP. In the Form 8-K, the Company stated in part:

On March 31, 2014, the Audit Committee (the "Audit Committee") of the Board of Directors of Retrophin, Inc. (the "Company"), notified Marcum LLP ("Marcum") that it had determined not to engage Marcum as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2014, and accordingly dismissed Marcum effective as of such date. On and effective as of that same date, the Company entered into an engagement letter with BDO USA, LLP ("BDO"), approved by the Audit Committee, and engaged BDO as the Company's independent registered public accounting firm.

35.     On April 14, 2014, the Company filed the Proxy, which attached as an exhibit Retrophin's 2014 Incentive Compensation Plan. According to the Proxy, on March 20, 2014, the Board of Directors approved the Plan, which would be effective May 9, 2014 subject to stockholder approval at the 2014 Annual Meeting.   The Plan covers stock options, stock appreciation rights, restricted stock and restricted stock units, deferred stock, performance units and annual incentive awards.   As indicated in the Plan, the Compensation Committee shall administer the Plan.  Moreover, Section 3.2 of the Plan provides:

> Powers of the Committee . Subject to and consistent with the provisions of the Plan, the Committee *shall have full power and authority and sole discretion as follows*:
>
> (a)     to determine when, to whom ( *i.e.* , what Eligible Persons) and in what types and amounts Awards should be granted;
>
> (b)     to grant Awards to Eligible Persons in any number, and to determine the terms and conditions applicable to each Award, including (in each case, based on such considerations as the Committee shall determine) conditions intended to comply with Code Section 409A, the number of Shares or the amount of cash or other property to which an Award will relate, any Option Price or Strike Price, grant price or purchase price, any limitation or Restriction, any schedule for or performance conditions relating to the earning of the Award or the lapse of limitations, forfeiture restrictions, restrictive covenants, restrictions on exercisability or transferability, any Performance Goals, including those relating to the Company and/or a Subsidiary and/or any division thereof and/or an individual, and/or vesting based on the passage of time, satisfaction of performance criteria or the occurrence of one or more events or conditions;
>
> (c)     to determine the benefit (including any Bonus Opportunity) payable under any Award and to determine whether any performance, vesting or transfer conditions, including Performance Measures or Performance Goals, have been satisfied;
>
> (d)     to determine whether or not specific Awards shall be granted in connection with other specific Awards;
>
> (e)     to determine the Term of an Award, as applicable;
>
> (f)     to determine the amount, if any, that a Grantee shall pay for Restricted Stock, whether to permit or require the payment of cash dividends

thereon to be paid and/or deferred, and the terms related thereto, when Restricted Stock (including Restricted Stock acquired upon the exercise of an Option) shall be forfeited and whether such Shares shall be held in escrow or other custodial arrangement;

(g)    to determine whether, to what extent and under what circumstances an Award may be settled in, or the exercise price of an Award may be paid in, cash, Shares, other Awards or other property, or an Award may be accelerated, vested, canceled, forfeited or surrendered or any terms of the Award may be waived, and to accelerate the exercisability of, and to accelerate or waive any or all of the terms and conditions applicable to, any Award or any group of Awards for any reason and at any time or to extend the period subsequent to the Termination of Service within which an Award may continue to vest and/or be exercised;

(h)    to determine with respect to Awards granted to Eligible Persons, whether, to what extent and under what circumstances cash, Shares, other Awards, other property and other amounts payable with respect to an Award will be deferred, either at the election of the Grantee or if and to the extent specified in the Award Agreement automatically or at the election of the Committee (for purposes of limiting loss of deductions pursuant to Code Section 162(m) or otherwise) and to provide for the payment of interest or other rate of return determined with reference to a predetermined actual investment or independently set interest rate, or with respect to other bases permitted under Code Section 162(m), Code Section 409A or otherwise, for the period between the date of exercise and the date of payment or settlement of the Award;

(i)    to determine whether a Grantee has a Disability;

(j)    to determine whether and under what circumstances a Grantee has incurred a Termination of Service ( *e.g* ., whether Termination of Service was for Cause);

(k)    to make, amend, suspend, waive and rescind rules and regulations relating to the Plan;

(l)    without the consent of the Grantee, to make adjustments in the terms and conditions of, and the criteria in, Awards in recognition of unusual or non-recurring events (including events described in Section 4.2 ) affecting an Employer or the financial statements of an Employer, or in response to changes in applicable laws, regulations or accounting principles; provided , however , that in no event shall such adjustment increase the value of an Award for a person expected to be a Covered Employee for whom the Committee desires to have the Performance-Based Exception apply;

(m)   to appoint such agents as the Committee may deem necessary or advisable to administer the Plan;

(n)   to determine the terms and conditions of all Award Agreements applicable to Eligible Persons (which need not be identical) and, with the consent of the Grantee (except as provided in this Section 3.2(n) , and Sections 5.5 and 15.2 ), to amend any such Award Agreement at any time;provided , however , that the consent of the Grantee shall not be required for any amendment (i) that does not adversely affect the rights of the Grantee, (ii) that is necessary or advisable (as determined by the Committee) to carry out the purpose of the Award as a result of any new law or regulation, or a change in an existing law or regulation or interpretation thereof, (iii) to the extent the Award Agreement specifically permits amendment without consent, or (iv) to the extent such amendment is a termination that is intended to comply with Treasury Regulations Section 1.409A-3(j)(4)(ix);

(o)   to make such adjustments or modifications to Awards to Grantees who are working outside the United States as are advisable to fulfill the purposes of the Plan or to comply with applicable local law and to establish sub-plans for Eligible Persons outside the United States with such provisions as are consistent with the principles of the Plan (but in compliance with local law) as may be suitable in other jurisdictions;

(p)   to impose such additional terms and conditions upon the grant, exercise or retention of Awards as the Committee may, before or concurrently with the grant thereof, deem appropriate, including limiting the percentage of Awards that may from time to time be exercised by a Grantee and requiring the Grantee to enter into restrictive covenants;

(q)   to correct any defect, supply any omission or reconcile any inconsistency, and to construe and interpret the Plan, any rules and regulations adopted hereunder, Award Agreements or any other instrument entered into or relating to an Award under the Plan; and

(r)   to take any other action with respect to any matters relating to the Plan for which it is responsible and to make all other decisions and determinations, including factual determinations, as may be required under the terms of the Plan or as the Committee may deem necessary or advisable for the administration of the Plan.

(emphasis added).

36.     On May 13, 2014, the Company filed a Form 8-K with the SEC announcing that Retrophin stockholders voted to approve the Company's 2014 Incentive Compensation Plan at the 2014 Annual Meeting on May 9, 2014.

37.     On May 14, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ended March 31, 2014. Retrophin reported a net loss of $70.6 million for the quarter ended March 31, 2014, compared to a net loss of $4.9 million during the same period in 2013. Retrophin's balance sheet at March 31, 2014 included $5 million in cash, cash equivalents and marketable securities.

38.     On May 15, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Shkreli and Panoff, and reiterated the Company's previously announced annual financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Shkreli and Panoff, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting. The SOX certifications included in the Company's Form 10-Q were substantially similar to those described in paragraph 32.

39.     With regard to the Company's incentive-based compensation, the first quarter Form 10-Q also stated:

> *Share Based Compensation*
>
> For the three months ended March 31, 2014, the Company issued 716,500 shares of restricted common stock. Compensation expense amounted to $3,655,652 for the three months ended March 31, 2014.
>
> For the three months ended March 31, 2013, the Company issued 12,500 shares of restricted common stock. Compensation expense amounted to $159,205 for the three months ended March 31, 2013.
>
> *Restricted Shares*

As of March 31, 2014 and December 31, 2013, there was approximately $8,395,949 and $1,105,967 of unrecognized compensation cost related to restricted shares issued. As of March 31, 2014 and December 31, 2013, these amounts are expected to be recognized over a weighted average period of 2.80 and 2.19 years, respectively. Unvested restricted shares consist of the following as of March 31, 2014 and December 31, 2013.

| | Employee - number of shares | Non Employee - number of shares | Total number of shares | Weighted Average Grant Date Fair Value |
|---|---|---|---|---|
| Unvested December 31, 2012 | 52,772 | 214,996 | 267,768 | $ 3.20 |
| Granted | 135,000 | - | 135,000 | 6.24 |
| Vested | (36,724) | (139,069) | (175,793) | 5.44 |
| Forfeited | (20,833) | (37,500) | (58,333) | 4.00 |
| Unvested December 31, 2013 | 130,215 | 38,427 | 168,642 | 6.44 |
| Granted | 400,000 | - | 400,000 | 15.25 |
| Vested | (16,810) | (18,347) | (35,247) | 13.67 |
| Forfeited | - | - | - | - |
| Unvested March 31, 2014 | 513,405 | 19,990 | 533,395 | $ 13.53 |

*Exercise of Warrants*

During the three months ended March 31, 2014, the Company issued 833,197 shares of common stock upon the exercise of warrants for cash received by the Company in the amount of $4,039,151. The Company reclassified $9,300,160 of derivative liability as equity for the value of these warrants on the date of exercise. The warrants were revalued immediately prior to exercise and the change in the fair value of the warrants was recorded as other expense in the condensed consolidated financial statements of the Company.

*Stock Options*

During the three months ended March 31, 2014, the Company granted options to purchase 1,160,000 shares of common stock to employees of the Company. The options vest as follows: (i) 760,000 vest quarterly in pro rata portions during the 3 years following the effective date of April 1, 2014, (ii) 200,000 vest in twelve equal installments on the last day of each calendar quarter beginning on March 31, 2014, (iii) 100,000 vest upon such time as the Company's revenues meet or exceed $50 million in the aggregate over any consecutive four fiscal quarter period (but no earlier than February 24, 2015), (iv) 50,000 vest upon such time as the trailing twenty day average of the closing price of the Company's common stock equals or exceeds $25 per share (but no earlier than February 24, 2015), and (v) 50,000 upon such time as the trailing twenty day average of the closing price of the Company's common stock equals or exceeds $33 per share (but no earlier than February 24, 2016).

14

The Company valued 960,000 of these options using the Black-Scholes option-pricing model with the following assumptions: risk-free interest rate of 1.57%, expected term (in years) of 5.81, expected volatility of 70%, and an exercise price equal to the fair value of the stock on the date of issuance of $19.00 per share. The Company valued 100,000 of the market performance based options using the Binomial Lattice options pricing model. The Company will record stock compensation expense for the 100,000 options that vest based on revenue performance conditions when achievement is considered probable. No compensation expense has been recorded in the current period in relation to the revenue performance based options as this achievement has not yet been deemed probable. For the three months ended March 31, 2014 and 2013, the Company recognized $1,350,703 and $0, respectively, as compensation expense related to the Options. As of March 31, 2014, there was approximately $24,091,555 of unrecognized compensation expense related to stock options.

*Stock Repurchases*

In the first quarter of 2014, the Company repurchased 248,801 shares of its common stock for an aggregate purchase price of $2,257,336. The Company currently recognizes such repurchased common stock as treasury stock.

40.     On August 12, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ended June 30, 2014. GAAP net income for the second quarter of 2014 was $8.5 million, or $0.33 per basic share and a $0.90 net loss per dilutive share, compared to a net loss of $5.0 million, or $0.41 per diluted share, for the second quarter of 2013. At June 30, 2014, Retrophin's balance sheet included $43.4 million in cash, cash equivalents and marketable securities.

41.     On August 14, 2014, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by defendants Shkreli and Panoff, and reiterated the Company's previously announced annual financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Shkreli and Panoff, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting. The SOX certifications included in the Company's Form 10-Q were substantially similar to those described in paragraph 32.

42.     With regard to the Company's Incentive Compensation Plan, the second quarter

Form 10-Q stated that:

*Share Based Compensation*

Share based compensation expenses consist of the following for the three months
and six months ended June 30, 2014 and 2013, respectively:

|  | Three Months Ended | | Six Months Ended | |
| --- | --- | --- | --- | --- |
|  | June 30, 2014 | June 30, 2013 | June 30, 2014 | June 30, 2013 |
| Restricted Shares | $ 2,857,681 | $    91,705 | $  6,513,331 | $ 250,909 |
| Stock Options | 2,150,591 | 36,683 | 3,501,295 | 36,683 |
| Total | $ 5,008,272 | $   128,388 | $10,014,626 | $ 287,592 |

*Exercise of Warrants*

During the six months ended June 30, 2014, the Company issued 1,962,377 shares
of common stock upon the exercise of warrants for cash received by the Company
in the amount of $8,337,380. The Company reclassified $23,364,668 derivative
liability as equity for the value of these warrants on the date of exercise. The
warrants were revalued immediately prior to exercise and the change in the fair
value of the warrants was recorded as other expense in the condensed
consolidated financial statements of the Company.

*Stock Repurchases*

During the six months ended June 30, 2014, the Company repurchased 248,801
shares of its common stock for an aggregate purchase price of $2,257,336. The
Company currently recognizes such repurchased common stock as treasury stock.

43.     The statements referenced in ¶¶ 30–33, 35, and 37–42 above were materially false

and/or misleading because they misrepresented and failed to disclose the following adverse facts

pertaining to the Company's business, operational and compliance policies, which were known

to Defendants or recklessly disregarded by them.  Specifically, Defendants made false and/or

misleading statements and/or failed to disclose that: (i) Retrophin's founder and Chief Executive

Officer was committing stock-trading irregularities during the Class Period;  (ii) said

irregularities included grants of Retrophin stock to certain recipients in the absence of a

shareholder-approved distribution plan, failures to disclose stock grants, and grants of stock in violation of the Company's Incentive Compensation Plan; (iii) as a result of the above, Defendants committed violations of the Company's Incentive Compensation Plan and other securities rules, including NASDAQ Listing Rules; and (iv) the Company's financial statements and other SEC filings were materially false and/or misleading at all relevant times.

### The Truth Emerges

44.     On September 16, 2014, after the close of trading, the Company issued a press release and filed a Form 8-K with the SEC announcing that on September 15, 2014, it had reached an agreement with its CFO, Marc Panoff, pursuant to which Mr. Panoff's employment with the Company will terminate, effective as of February 28, 2015.   Also, the Company announced that on September 10, 2014, Jeffrey Paley, MD abruptly stepped down as a member of the Board of Directors.

45.     As a result of this news, shares of Retrophin fell $1.03 or over 8%, on unusually heavy trading, to close at $11.46 on September 17, 2014.

46.     Thereafter, on September 30, 2014, after the close of trading, the Company issued a press release announcing that its Board of Directors had terminated Chief Executive Officer and founder, Martin Shkreli, effective immediately, and appointed Stephen Aselage as interim Chief Executive Officer.

47.     As a result of this news, shares of Retrophin fell $0.40 or almost 4.5%, on unusually heavy trading, to close at $8.62 on October 1, 2014.

48.     On October 2, 2014, an article was published in *Bloomberg Businessweek* stating that Retrophin fired Shkreli because he engaged in stock-trading irregularities and other violations of securities rules. The article stated, in part:

17

> According to people familiar with the company, the board concluded that Shkreli had committed stock-trading irregularities and other violations of securities rules. The violations included grants of Retrophin stock to certain recipients in the absence of a shareholder-approved distribution plan, failures to disclose stock grants, and grants of stock above limits imposed by the plan that was eventually put in place, the people said. Shkreli has not returned phone messages seeking comment.

49.    Finally, October 3, 2014, the Company announced the grant of inducement awards to 66 employees, as well as the grant of an inducement award to Alvin Shih, M.D., the Company's Executive Vice President of Research and Development.

50.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## NASDAQ LISTING RULES

51.    Generally, NASDAQ Marketplace Rule 4350(i)(1)(A) requires each issuer to obtain shareholders' approval of all equity compensation plans (including stock option plans) and *material amendments to such plans*.

52.    Specifically, NASDAQ Marketplace Rule 4350(i)(1)(A) provides:

**(i) Shareholder Approval**

> (1) Each issuer shall require shareholder approval or prior to the issuance of securities under subparagraph (A), (B), (C), or (D) below:

>> (A) when a stock option or purchase plan is to be established or materially amended or other equity compensation arrangement made or materially amended, pursuant to which stock may be acquired by officers, directors, employees, or consultants.

53.    Upon information and belief and according to the October 2, 2014 *Bloomberg Businessweek* article, defendant Shkreli granted shares of Retrophin stock to certain recipients in the absence of a shareholder-approved distribution plan, and granted additional stock to certain

recipients above limits imposed by the Company's Incentive Compensation Plan without obtaining shareholder approval.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Retrophin securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Retrophin securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Retrophin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

56.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Retrophin;

- whether the Individual Defendants caused Retrophin to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Retrophin securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

60.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Retrophin securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Retrophin securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

61.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

62.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

65.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.   Such scheme was intended to, and, throughout the Class Period, did:   (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Retrophin securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Retrophin securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

66.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Retrophin securities.   Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Retrophin's stock granting practices.

67.     By virtue of their positions at Retrophin, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative,

Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

68.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Retrophin securities from their personal portfolios.

69.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Retrophin, the Individual Defendants had knowledge of the details of Retrophin's internal affairs.

70.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Retrophin. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Retrophin's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Retrophin securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Retrophin's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or

23

otherwise acquired Retrophin securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

71.     During the Class Period, Retrophin securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Retrophin securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Retrophin securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Retrophin securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

72.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

<u>**COUNT II**</u>

**(Violations of Section 20(a) of the
<u>Exchange Act Against The Individual Defendants)</u>**

74.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.    During the Class Period, the Individual Defendants participated in the operation and management of Retrophin, and conducted and participated, directly and indirectly, in the conduct of Retrophin's business affairs.  Because of their senior positions, they knew the adverse non-public information about Retrophin's misstatement of income and expenses and false financial statements.

76.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Retrophin's financial condition and results of operations, and to correct promptly any public statements issued by Retrophin which had become materially false or misleading.

77.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Retrophin disseminated in the marketplace during the Class Period concerning Retrophin's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Retrophin to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Retrophin within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Retrophin securities.

78.     Each of the Individual Defendants, therefore, acted as a controlling person of Retrophin. By reason of their senior management positions and/or being directors of Retrophin, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Retrophin to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Retrophin and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

79.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Retrophin.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   October 20, 2014,

                                          Respectfully submitted,

                                          **POMERANTZ LLP**

                                          Jeremy A. Lieberman
                                          Francis P. McConville
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone:   (212) 661-1100
                                          Facsimile:   (212) 661-8665
                                          Email:  jalieberman@pomlaw.com
                                                     fmcconville@pomlaw.com

                                          **POMERANTZ LLP**
                                          Patrick V. Dahlstrom
                                          10 South La Salle Street, Suite 3505
                                          Chicago, Illinois 60603
                                          Telephone:   (312) 377-1181
                                          Facsimile:   (312) 377-1184
                                          Email:  pdahlstrom@pomlaw.com

                                          *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, _____GRACHYA, KAZANCHYAN_____, make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Retrophin, Inc. ("Retrophin" or the "Company"), and

authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Retrophin securities at the direction of plaintiffs counsel or in order

to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired Retrophin securities during the class period, including providing testimony at deposition and trial, if

necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this

action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Retrophin

securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as

set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and

expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


Executed _____ 14 OCT 2014 _____
              **(Date)**


_____
       **(Signature)**


GRACHYA, KAZANCHYAN
_____
       **(Type or Print Name)**

**RETROPHIN, INC (RTRX)**                                    **Kazanchyan, Grachya**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 6/5/2014 | PUR | 900 | $11.6726 |
| 6/6/2014 | PUR | 400 | $10.8500 |
| 7/18/2014 | PUR | 200 | $10.5000 |
| 7/18/2014 | PUR | 50 | $10.5000 |