# EXHIBIT A

EDGAR Online

# RETROPHIN, INC.

# FORM DEF 14A
### (Proxy Statement (definitive))

## Filed 01/23/15 for the Period Ending 02/03/15

| | |
|---|---|
| Address | 777 THIRD AVENUE 22ND FLOOR |
| | NEW YORK, NY 10017 |
| Telephone | 212-983-1310 |
| CIK | 0001438533 |
| Symbol | RTRX |
| SIC Code | 2834 - Pharmaceutical Preparations |
| Industry | Biotechnology & Drugs |
| Sector | Healthcare |
| Fiscal Year | 02/28 |

Powered By EDGAR Online

http://www.edgar-online.com

© Copyright 2015, EDGAR Online, Inc. All Rights Reserved.

Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

---

### SCHEDULE 14A

### (RULE 14a-101)

### INFORMATION REQUIRED IN
### PROXY STATEMENT

## SCHEDULE 14A INFORMATION

### Proxy Statement Pursuant to Section 14(a) of the
### Securities Exchange Act of 1934
### (Amendment No.    )

---

Filed by the Registrant ☒                    Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐   Preliminary Proxy Statement

☐   **Confidential, For Use of the Commission Only (as permitted by Rule 14a-6(e)(2))**

☒   Definitive Proxy Statement

☐   Definitive Additional Materials

☐   Soliciting Material Pursuant to § 240.14a-12

# RETROPHIN, INC.
### (Name of Registrant as Specified in its Charter)

### N/A
### (Name of Person(s) Filing Proxy Statement, if Other Than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☒   No fee required.

☐   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

   (1)   Title of each class of securities to which transaction applies:

   (2)   Aggregate number of securities to which transaction applies:

   (3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

   (4)   Proposed maximum aggregate value of transaction:

(5)   Total fee paid:

_____

☐   Fee paid previously with preliminary materials:

☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1)   Amount previously paid:

_____

(2)   Form, Schedule or Registration Statement No.:

_____

(3)   Filing Party:

_____

(4)   Date Filed:

_____

**RETROPHIN, INC.**
**12255 El Camino Real, Suite 250**
**San Diego, CA 92130**

**NOTICE OF SPECIAL MEETING OF STOCKHOLDERS**
**To Be Held On February 3, 2015**

Dear Stockholder:

You are cordially invited to attend a Special Meeting of Stockholders of Retrophin, Inc., a Delaware corporation (the "Company"). The meeting will be held on February 3, 2015 at 10:00 a.m. local time at Retrophin, Inc., 12255 El Camino Real, Suite 250, San Diego, CA 92130, for the following purposes:

1. To ratify the Company's prior issuance of stock options to purchase 1,928,000 shares of common stock and 230,000 restricted shares of common stock granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Listing Rules of the Nasdaq Stock Market LLC ("Nasdaq"), in order to allow the Company to regain compliance with such Nasdaq Listing Rules; and

2. To transact such other business as may properly come before the meeting or any adjournment or postponement thereof.

These items of business are more fully described in the proxy statement accompanying this notice.

The record date for the Special Meeting is January 13, 2015. Only stockholders of record at the close of business on that date may vote at the meeting or any adjournment thereof.

By Order of the Board of Directors

/s/ Margaret Valeur-Jensen
Margaret Valeur-Jensen, Ph.D., J.D.
*General Counsel*

San Diego, California
January 23, 2015

**You are cordially invited to attend the meeting in person. Whether or not you expect to attend the meeting, please vote by proxy pursuant to the instructions set forth herein as promptly as possible in order to ensure your representation at the meeting. Even if you have voted by proxy, you may still vote in person if you attend the meeting. Please note, however, that if your shares are held of record by a broker, bank or other nominee and you wish to vote at the meeting, you must obtain a proxy issued in your name from that record holder.**

**RETROPHIN, INC.**
**12255 El Camino Real, Suite 250**
**San Diego, CA 92130**

**PROXY STATEMENT**
**FOR A SPECIAL MEETING OF STOCKHOLDERS**

To be held on February 3, 2015

**QUESTIONS AND ANSWERS ABOUT THIS PROXY MATERIAL AND VOTING**

**Why did I receive these proxy materials?**

We have sent you this proxy statement and the enclosed proxy card because the Board of Directors of Retrophin, Inc. (sometimes referred to as the "Company," "Retrophin," "we" or "us") is soliciting your proxy to vote at a Special Meeting of Stockholders (the "Special Meeting"), including any adjournments or postponements of the Special Meeting.

We intend to mail these proxy materials on or about January 23, 2015 to all stockholders of record entitled to vote at the Special Meeting.

**Who can vote at the Special Meeting?**

Only stockholders of record at the close of business on January 13, 2015 (the "record date") will be entitled to vote at the Special Meeting. On the record date, there were 26,459,904 shares of common stock outstanding and entitled to vote.

*Stockholder of Record: Shares Registered in Your Name*

If on the record date your shares were registered directly in your name with the Company's transfer agent, Standard Registrar & Transfer Co. Inc., then you are a stockholder of record. As a stockholder of record, you may vote in person at the meeting or vote by proxy. Whether or not you plan to attend the Special Meeting, we urge you to vote by proxy pursuant to the instructions set forth below to ensure your vote is counted.

*Beneficial Owner: Shares Registered in the Name of a Broker or Bank*

If on the record date your shares were held, not in your name, but rather in an account at a brokerage firm, bank, dealer, or other similar organization, then you are the beneficial owner of shares held in "street name" and these proxy materials are being forwarded to you by that organization. The organization holding your account is considered to be the stockholder of record for purposes of voting at the Special Meeting. As a beneficial owner, you have the right to direct your broker or other agent on how to vote the shares in your account. You are also invited to attend the Special Meeting. However, since you are not the stockholder of record, you may not vote your shares in person at the Special Meeting unless you request and obtain a valid proxy from your broker or other agent.

**What am I voting on?**

The Company is presenting one proposal for stockholder vote.

The proposal to be voted on is the ratification of the Company's prior issuance of stock options to purchase 1,928,000 shares of common stock and 230,000 restricted shares of common stock granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Listing Rules of the Nasdaq Stock Market LLC ("Nasdaq"), in order to allow the Company to regain compliance with such Nasdaq Listing Rules. You may find information about this proposal beginning on page 5 of this proxy statement.

1

You may vote "For" the proposal, vote "Against" the proposal or "Abstain" from voting on the proposal.

The Board of Directors unanimously recommends a vote FOR this proposal.

**What if another matter is properly brought before the Special Meeting?**

The Board of Directors knows of no other matters that will be presented for consideration at the Special Meeting. If any other matters are properly brought before the Special Meeting, it is the intention of the persons named in the proxy to vote on those matters in accordance with their best judgment.

**How do I vote?**

The procedures for voting are as follows:

*Stockholder of Record: Shares Registered in Your Name*

If you are a stockholder of record, you may (a) vote in person at the Special Meeting or (b) vote by proxy using the enclosed proxy card. Whether or not you plan to attend the Special Meeting, we urge you to vote by proxy to ensure your vote is counted. You may still attend the Special Meeting and vote in person if you have already voted by proxy.

- To vote in person, come to the Special Meeting and we will give you a ballot when you arrive.

- To vote using the proxy card, simply complete, sign and date the enclosed proxy card and return it promptly in the envelope provided, by electronic mail using the email address provided in the proxy card, or by facsimile using the number provided in the proxy card. Your signed proxy card must be received by 5:00 PM U.S. Eastern time on February 2, 2015 to be counted.

*Beneficial Owner: Shares Registered in the Name of Broker or Bank*

If you are a beneficial owner of shares registered in the name of your broker, bank, or other agent, you should have received a proxy card and voting instructions with this proxy statement from that organization rather than from Retrophin. Simply complete and mail, email or fax the proxy card as directed by the voting instructions to ensure that your vote is counted. Alternatively, you may be able to vote by telephone or over the Internet as instructed by your broker or bank. To vote in person at the Special Meeting, you must obtain a valid proxy from your broker, bank, or other agent. Follow the instructions from your broker or bank included with our proxy materials, or contact your broker or bank to request a proxy form.

**How many votes do I have?**

On each matter to be voted upon, you have one vote for each share of common stock you owned as of the record date.

**What if I return a proxy card or otherwise vote by proxy but do not make specific choices?**

If you voted by proxy without marking any voting selections, your shares will be voted "For" the ratification of the Company's prior issuance of stock options to purchase 1,928,000 shares of common stock and 230,000 restricted shares of common stock granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Nasdaq Listing Rules, in order to allow the Company to regain compliance with such Nasdaq Listing Rules.

**Who is paying for this proxy solicitation?**

We will pay for the entire cost of soliciting proxies. In addition to these proxy materials, our directors and employees may also solicit proxies in person, by telephone, or by other means of communication. Directors and

employees will not be paid any additional compensation for soliciting proxies. We will also reimburse brokerage firms, banks and other agents for the cost of forwarding proxy materials to beneficial owners.

In addition, we have retained Alliance Advisors to assist in the solicitation. We will pay Alliance Advisors approximately $6,000 plus out-of-pocket expenses, for its assistance.

### What does it mean if I receive more than one proxy card?

If you receive more than one proxy card, your shares are registered in more than one name or are registered in different accounts. Please follow the voting instructions with respect to **each** proxy card to ensure that all of your shares are voted.

### Can I change my vote after submitting my proxy?

Yes. You can revoke your proxy at any time before the final vote at the Special Meeting. If you are a stockholder of record, you may revoke your proxy in any one of the following ways:

- You may send a written notice that you are revoking your proxy to Retrophin's Secretary at 12255 El Camino Real, Suite 250, San Diego, CA 92130.

- You may submit another properly completed proxy card with a later date.

- You may attend the Special Meeting and vote in person. However, simply attending the Special Meeting will not, by itself, revoke your proxy.

Your most current proxy is the one that is counted.

If your shares are held by your broker or bank as a nominee or agent, you should follow the instructions provided by your broker or bank.

### How are votes counted?

Votes will be counted by the inspector of election appointed for the meeting, who will separately count "For" and "Against" votes, abstentions and broker non-votes. Abstentions will be counted towards the vote total for each proposal, and will have the same effect as "Against" votes. Broker non-votes will also have the same effect as "Against" votes.

### What are "broker non-votes"?

Broker non-votes occur when a beneficial owner of shares held in street name does not give instructions to the broker or nominee holding the shares as to how to vote on matters deemed "non-routine." Generally, if shares are held in street name (shares are held by your broker as your nominee), the beneficial owner of the shares is entitled to give voting instructions to the broker or nominee holding the shares. If you do not give instructions to your broker, your broker can vote your shares with respect to matters that are considered to be "routine," but not with respect to "non-routine" matters. Under the rules and interpretations of the New York Stock Exchange, "non-routine" matters are generally those involving a contest or a matter that may substantially affect the rights or privileges of stockholders. The proposal to ratify the Company's prior issuance of equity awards granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Nasdaq Listing Rules, in order to allow the Company to regain compliance with such Nasdaq Listing Rules, is a non-routine matter.

### How many votes are needed to approve the proposal?

To be approved, the proposal to ratify the Company's prior issuance of equity awards granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Nasdaq Listing Rules, in order to allow the Company to regain compliance with such Nasdaq Listing Rules, must receive "For" votes from holders of a majority of the shares present in person or represented by proxy and entitled to vote at the Special Meeting.

3

If you "Abstain" from voting, it will have the same effect as an "Against" vote. Broker non-votes will also have the same effect as "Against" votes.

**What is the quorum requirement?**

A quorum of stockholders is necessary to hold a valid Special Meeting. A quorum will be present if at least a majority of the outstanding shares entitled to vote are represented by stockholders present at the Special Meeting or by proxy. On the record date, there were 26,459,904 shares outstanding and entitled to vote. Thus, 13,229,953 shares must be represented by stockholders present at the Special Meeting or by proxy to have a quorum.

Your shares will be counted towards the quorum only if you submit a valid proxy (or one is submitted on your behalf by your broker, bank or other nominee) or if you vote in person at the Special Meeting. Abstentions and broker non-votes will be counted towards the quorum requirement. If there is no quorum, the chairman of the Special Meeting or a majority of the votes present at the Special Meeting may adjourn the meeting to another date.

**How can I find out the results of the voting at the Special Meeting?**

Preliminary voting results will be announced at the Special Meeting. Final voting results will be published in a current report on Form 8-K that we expect to file no later than February 9, 2015. If final voting results are not available to us in time to file a Form 8-K on or before February 9, 2015, we intend to file a Form 8-K to publish preliminary results and, within four business days after the final results are known to us, file an additional Form 8-K to publish the final results.

4

**PROPOSAL**

**RATIFICATION OF EMPLOYEE EQUITY AWARDS**

**Overview**

In January 2014, the Company began trading on The Nasdaq Global Market under the symbol "RTRX". As a company traded on The Nasdaq Global Market, the Company is subject to the Nasdaq Listing Rules, including Listing Rule 5635(c), which requires stockholder approval prior to the issuance of securities when a stock option or purchase plan is to be established or other equity compensation arrangement made. Nasdaq provides for specific exceptions to Listing Rule 5635(c), including exceptions for equity awards that qualify as "inducement awards", which are awards to a person not previously an employee or director of the company, or following a bona fide period of non-employment, as an inducement material to the individual entering into employment with the company.

Between February 24, 2014 and August 18, 2014, the Company issued to employees of the Company stock options to purchase 1,928,000 shares of the Company's common stock (the "Options") and 230,000 shares of restricted common stock (the "Restricted Stock" and together with the Options, the "Equity Awards") without stockholder approval. A detailed description of each Equity Award is set forth on **Appendix A** to this Proxy Statement. Believing that the Equity Awards acted as an inducement material to persons entering into employment with the Company, and therefore qualified as "inducement awards", the Company disclosed the Equity Awards as "inducement awards" in a press release issued on October 3, 2014.

On December 9, 2014, the Company received a letter from Nasdaq indicating that Nasdaq determined that the Company did not comply with the stockholder approval requirement of Listing Rule 5635(c), related to the Company's grant of the Equity Awards. Upon review of the Equity Awards, Nasdaq determined that the Equity Awards did not satisfy all of the criteria to qualify as "inducement awards".

In order to regain compliance with Listing Rule 5635(c), we have submitted this proposal to our stockholders for approval in order to ratify the Company's prior issuance of the Equity Awards. Ratification of the Equity Awards at the Special Meeting is part of a plan of compliance that the Company previously submitted to, and which was subsequently approved by, Nasdaq.

**Why we are asking our stockholders to ratify the Equity Awards**

We believe that our continued listing on The Nasdaq Global Market is vital to our long-term success. Approval of this proposal by our stockholders, as part of a plan of compliance approved by Nasdaq, will allow us to regain compliance with Listing Rule 5635(c) and avoid being delisted as a result of our prior issuance of the Equity Awards. In the future, we intend to take the steps necessary to ensure that all grants of equity awards comply with the Nasdaq Listing Rules.

The Equity Awards were previously granted by us as a vital part of our compensation program to promote an ownership culture and serve to ensure that the compensation of our employees is linked to our long-term success. We believe that the Equity Awards were appropriate to attract and retain new employees and to provide incentives for such persons to exert maximum efforts for our success and ultimately increase stockholder value.

If this proposal is not approved by our stockholders at the Special Meeting, we would be required to identify alternative plans to regain compliance with Listing Rule 5635(c), which may not be possible under the circumstances. In the event we were able to identify an alternative plan of compliance, it may include the exchange and/or issuance of new equity awards or the payment of cash compensation, each of which would be time consuming and expensive to implement.

In the event that we fail to regain compliance with Listing Rule 5635(c), Nasdaq may delist our common stock. Any such delisting would adversely affect the market liquidity of our common stock and the market price of our common stock could decrease. The delisting of our common stock from Nasdaq could also adversely

5

affect our ability to obtain financing for the continuation of our operations and/or result in the loss of confidence by investors, employees and other stakeholders in the Company.

**Other aspects of our plan of compliance approved by Nasdaq**

In addition to having our stockholders approve this proposal at the Special Meeting, there are other aspects of our plan to Nasdaq to regain compliance with Listing Rule 5635(c).

First, until such time that this proposal is approved by our stockholders at the Special Meeting, we will not permit any of the Options from being exercised and we will not permit shares of our common stock from being issued upon the vesting of the Restricted Stock. These restrictions ensure that the Equity Awards do not result in the issuance of additional shares of common stock prior to the approval of this proposal at the Special Meeting.

Second, we have entered into a lock-up agreement with the holder of the Restricted Stock, pursuant to which such employee has agreed not to sell, dispose of, transfer, make any short sale of, grant any option for the purchase of, or enter into any hedging or similar transaction with the same economic effect as a sale with respect to, any shares of our common stock that have been acquired pursuant to the vesting of the Restricted Stock. The lock-up agreement will terminate by its terms following the approval of this proposal at the Special Meeting.

Third, our Board of Directors has taken action, which will be effective automatically following approval of this proposal at the Special Meeting, to reduce the stockholder-approved share reserve under the Company's 2014 Incentive Compensation Plan (the "Plan") by an amount equal to 75,000 shares of common stock, which represents the number of shares of common stock previously sold by Maged Shenouda, a former employee of the Company, upon the vesting of a restricted common stock award that was previously issued by the Company on February 24, 2014 and was believed by the Company to qualify as an "inducement award" and included in the Company's October 3, 2014 press release (the "Terminated RSU"). Nasdaq likewise determined that the issuance of the Terminated RSU was not in compliance with Listing Rule 5635(c). Because the underlying shares have already been resold into the market, in lieu of seeking ratification of this grant, the Company has committed to reduce the stockholder-approved share reserve under the Plan by 75,000 shares of common stock to ensure that our stockholders will not suffer dilution as a result of the Terminated RSU beyond an amount already authorized as part of the approval of the Plan.

**Interests of directors and executive officers**

No director or executive officer of the Company since the beginning of the last fiscal year, other than Alvin Shih, was a recipient of an Equity Award. Dr. Shih, our Executive Vice President of Research & Development, is the holder of the Restricted Stock, which was granted on June 1, 2014. Given Dr. Shih's ownership interest in the Restricted Stock, he has a direct interest in this proposal.

**Required vote and Board of Directors recommendation**

The affirmative vote of the holders of a majority of the shares present in person or represented by proxy and entitled to vote at the Special Meeting will be required to approve this proposal. Abstentions will be counted toward the tabulation of votes cast on the proposal and will have the same effect as negative votes. Broker non-votes (if any) are counted towards a quorum, but are not counted for any purpose in determining whether this proposal has been approved.

THE BOARD OF DIRECTORS RECOMMENDS
A VOTE IN FAVOR OF THE P PROPOSAL

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth certain information regarding the ownership of the Company's common stock as of December 31, 2014 by: (i) each director, (ii) each named executive officer, (iii) each person known by us to beneficially own more than 5% of all outstanding shares of our common stock, and (iv) all executive officers and directors of the Company as a group. The table is based upon information supplied by our executive officers and directors and a review of Schedules 13D and 13G filed with the Securities and Exchange Commission (the "SEC"). Unless otherwise indicated in the footnotes to the table and subject to community property laws where applicable, we believe that each of the stockholders named in the table has sole voting and investment power with respect to the shares indicated as beneficially owned.

Applicable percentages are based on 26,428,071 shares outstanding on December 31, 2014, adjusted as required by rules promulgated by the SEC. These rules generally attribute beneficial ownership of securities to persons who possess sole or shared voting power or investment power with respect to those securities. In addition, the rules include shares of common stock issuable pursuant to the exercise of stock options, warrants or other convertible securities that are either immediately exercisable or exercisable on or before March 1, 2015, which is 60 days after December 31, 2014. These shares are deemed to be outstanding and beneficially owned by the person holding those securities for the purpose of computing the percentage ownership of that person, but they are not treated as outstanding for the purpose of computing the percentage ownership of any other person. The address for each person or entity listed in the table is c/o Retrophin, Inc., 12255 El Camino Real, Suite 250, San Diego, CA 92130.

| 5% or greater stockholders | Number of shares beneficially owed | Percentage of shares beneficially owned |
|---|---|---|
| Prudential Financial, Inc. (1) | | |
| 751 Broad Street | | |
| Newark, NJ 07102-3777 | 2,603,564 | 9.9% |
| Opaleye, L.P. (2) | | |
| 9B Russell Street | | |
| Cambridge, MA 02140 | 2,464,337 | 9.3% |
| QVT Financial LP (3) | | |
| 1177 Avenue of the Americas, 9th Floor | | |
| New York, NY 10036 | 1,666,668 | 6.3% |
| Broadfin Capital, LLC (4) | | |
| 237 Park Avenue, Suite 900 | | |
| New York, NY 10017 | 1,609,696 | 6.1% |
| **Directors and named executive officers** | | |
| Martin Shkreli (5) | 2,547,956 | 9.4% |
| Stephen Aselage (6) | 359,034 | 1.4% |
| Marc Panoff (7) | 168,315 | * |
| Alvin Shih (8) | 76,668 | * |
| Steve Richardson (9) | 128,887 | * |
| Margaret Valeur-Jensen | — | — |
| Cornelius Golding (10) | 21,167 | * |
| Jeffrey Meckler (11) | 21,668 | * |
| Gary Lyons (12) | 6,668 | * |
| All current executive officers and directors as a group (8 persons) | 630,759 | 2.4% |

\*      Represents beneficial ownership of less than one percent.
(1)     Prudential Financial, Inc. ("Prudential") is a parent holding company and the indirect parent of Jennison Associates LLC ("Jennison") and Quantitative Management Associates LLC, who are the beneficial owners of 2,602,564 and 1,000 shares of the Company's common stock, respectively. This information

7

was derived from a Schedule 13G/A filed with the SEC on May 9, 2014. Jennison filed a separate Schedule 13G/A with the SEC on May 7, 2014. Jennison furnishes investment advice to several investment companies, insurance separate accounts, and institutional clients ("Managed Portfolios"). As a result of its role as investment adviser of the Managed Portfolios, Jennison may be deemed to be the beneficial owner of the shares of our common stock held by such Managed Portfolios. Prudential indirectly owns 100% of equity interests of Jennison. As a result, Prudential may be deemed to have the power to exercise or to direct the exercise of such voting and/or dispositive power that Jennison may have with respect to our common stock held by the Managed Portfolios.

(2)    Opaleye GP LLC ("LLC") and James Silverman share voting and investment power with respect to the shares held by this stockholder. The LLC is the general partner of Opaleye, L.P. James Silverman is the sole member and manager of the LLC. Such amount includes 366,666 shares of common stock issuable upon exercise of warrants to purchase our common stock. This information was derived from a Form 3 filed with the SEC on January 3, 2014.

(3)    QVT Financial LP ("QVT Financial") is the investment manager for QVT Fund V LP and other private investment funds (collectively, the "Funds"). The Funds aggregately own 1,666,668 shares of our common stock. Accordingly, QVT Financial may be deemed to be the beneficial owner of an aggregate amount of 1,666,668 shares of our common stock, consisting of the shares owned by the Funds. QVT Financial GP LLC, as General Partner of QVT Financial, may be deemed to beneficially own the same number of shares of our common stock reported by QVT Financial. QVT Associates GP LLC, as General Partner of the Funds, may be deemed to beneficially own the aggregate number of shares of common stock owned by the Funds, and accordingly, QVT Associates GP LLC may be deemed to be the beneficial owner of an aggregate amount of 1,666,668 shares of our common stock. An entity affiliated with QVT Financial (the "Additional Holder") beneficially owns 144,446 shares of our common stock. Each of QVT Financial, QVT Financial GP LLC, QVT Associates GP LLC and the Funds disclaims beneficial ownership of the shares owned by the Additional Holder. This information was derived from a Schedule 13G/A filed with the SEC on February 14, 2014.

(4)    Broadfin Healthcare Master Fund, Ltd. and Kevin Kotler share voting and disposition power with respect to the shares held by this stockholder. This information was derived from a Schedule 13G filed with the SEC on January 17, 2014.

(5)    Beneficial ownership was derived from a Form 4 filed with the SEC on November 11, 2014. Includes 720,000 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014. Includes 62,778 shares of common stock issuable upon the exercise of warrants.

(6)    Includes 87,000 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014. Includes 278 shares of common stock issuable upon the exercise of warrants.

(7)    Includes 166,665 shares of common stock issuable in connection with restricted common stock that will vest within 60 days of December 31, 2014. Includes 550 shares of common stock issuable upon exercise of warrants.

(8)    Includes 19,167 shares of common stock issuable in connection with restricted common stock that will vest within 60 days of December 31, 2014.

(9)    Includes 19,167 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014. Includes 555 shares of common stock issuable upon the exercise of warrants.

(10)    Includes 16,167 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014.

(11)    Includes 3,334 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014. Includes 3,334 shares of common stock issuable in connection with restricted common stock that will vest within 60 days of December 31, 2014.

(12)    Includes 3,334 shares of common stock issuable upon exercise of stock options which have vested or will vest within 60 days of December 31, 2014. Includes 3,334 shares of common stock issuable in connection with restricted common stock that will vest within 60 days of December 31, 2014.

**EXECUTIVE COMPENSATION**

The following table sets forth the compensation paid by the Company for the fiscal years 2013 and 2014 to its named executive officers.

**Summary Compensation Table**

| Name and Principal Position | Fiscal Year | Salary ($) | Bonus ($)(7) | Stock Awards ($)(1) | Option Awards ($)(1) | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Stephen Aselage, *Chief Executive Officer and Director (3)* | 2014 | 202,170 | — | 1,009,000 | 7,206,000 | 12,500 (2) | 8,429,670 |
| Martin Shkreli, *Former Chief Executive Officer* | 2014 | 237,500 | 300,000 | — | 7,600,000 | 62,500 (4) | 8,200,000 |
|  | 2013 | 252,091 | 1,233,430 | — | 9,925,200 | — | 11,410,721 |
| Alvin Shih, *Executive Vice President of Research and Development* | 2014 | 262,500 | 50,000(5) | 3,165,490 | — | — | 3,477,990 |
| Margaret Valeur-Jensen, *General Counsel* | 2014 | 70,833 | — | 945,000 | — | — | 1,015,833 |
| Marc Panoff, *Former Chief Financial Officer (6)* | 2014 | 269,375 | 76,667 | 1,900,000 | — | — | 2,246,042 |
|  | 2013 | 142,153 | 104,155 | 157,808 | — | — | 404,116 |

(1)   In accordance with SEC rules, this column reflects the aggregate grant date fair value of the equity awards granted during 2013 and 2014 computed in accordance with Financial Accounting Standard Board Accounting Standards Codification Topic 718 for stock-based compensation transactions (ASC 718). These amounts do not reflect the actual economic value that will be realized by the named executive officer in connection with such equity awards.

(2)   Amount shown represents fees paid to Mr. Aselage as a member of the Board of Directors prior to becoming an employee.

(3)   Mr. Aselage was appointed as our Chief Executive Officer in October 2014.

(4)   Amount shown represents severance payments to Mr. Shkreli.

(5)   Represents a signing bonus paid to Dr. Shih upon his entering into employment with the Company.

(6)   Pursuant to the terms of a separation agreement and release entered into with the Company on September 15, 2014, Mr. Panoff is entitled to a $137,500 severance payment payable on or before February 28, 2015. This severance payment has not yet been paid by the Company and is therefore not reflected in the table above.

(7)   As of the date of this proxy statement, discretionary bonuses to Mr. Aselage, Dr. Shih and Ms. Valeur-Jensen for performance during 2014, if any, have not been determined by the Company's Board of Directors.

***Compensation Arrangements***

*Martin Shkreli*

On October 13, 2014, Martin Shkreli resigned as a member of the Company's Board of Directors and as an employee of the Company, and from any and all other positions that he held with the Company. Pursuant to a

binding Summary Separation Proposal entered into between Mr. Shkreli and the Company on October 13, 2014, Mr. Shkreli is entitled to receive his annual base salary, any unpaid bonus and health insurance coverage on the same terms as made available to the Company's employees for a period of twelve months following such resignation, plus twelve months of continued vesting of all time-based stock options. Mr. Shkreli received a base salary of $252,091 and a bonus of $1,233,430 for fiscal 2013 and a base salary of $237,500 and a bonus of $300,000 for fiscal 2014.

*Stephen Aselage*

On November 6, 2014, the Board of Directors appointed Stephen Aselage as the Company's Chief Executive Officer. Prior to such appointment, Mr. Aselage had been serving as the Company's interim Chief Executive Officer.

In connection with his appointment as the Company's Chief Executive Officer, the Board of Directors (i) approved an increase in Mr. Aselage's annual base salary to $480,000, (ii) approved an increase in Mr. Aselage's bonus target percentage to 60% of his base salary, (iii) granted Mr. Aselage an option to purchase 300,000 shares of the Company's common stock at an exercise price per share equal to $10.09, which was the closing price of the Company's common stock on the date of grant, and (iv) granted Mr. Aselage a restricted stock unit covering 100,000 shares of the Company's common stock. The shares subject to the option vest in four equal quarterly installments starting on the first anniversary of the date of grant, and all the shares subject to the restricted stock unit will vest on the one-year anniversary of the date of grant; provided that if Mr. Aselage's employment with the Company is terminated prior to the one-year anniversary of the date of grant, 1/12th of the shares subject to the restricted stock unit shall vest for each full month past the grant date that Mr. Aselage has provided services to the Company.

*Alvin Shih, M.D.*

Alvin Shih, M.D. received a base salary of $262,500 and a signing bonus of $50,000 during fiscal 2014. Dr. Shih was awarded 230,000 shares of restricted common stock pursuant to his employment agreement, a pro rata portion of which will vest quarterly during the 3 years following his employment date. Dr. Shih is also entitled to receive a cash bonus award of up to 50% of his base salary for performance during 2014, which such bonus has not yet been determined by the Company's Board of Directors, but which is required to be not less than $100,000.

*Margaret Valeur-Jensen, Ph.D.*

On November 11, 2014, the Board of Directors appointed Margaret Valeur-Jensen, Ph.D. as the Company's General Counsel, effective November 17, 2014.

In connection with her appointment as the Company's General Counsel, Ms. Valeur-Jensen will be entitled to receive a base salary of $425,000 per year, and was granted a restricted stock unit covering 100,000 shares of the Company's common stock. The shares subject to the restricted stock unit will vest on November 1, 2015. In addition to her base salary, Ms. Valeur-Jensen is entitled to a discretionary annual performance-based cash bonus, with a target bonus equal to 50% of her base salary.

*Marc Panoff*

Marc Panoff received a base salary of $269,375 and a bonus of $76,667 during fiscal 2014. On February 24, 2014, Mr. Panoff received a discretionary award of 100,000 restricted shares of common stock of the Company, a pro rata portion of which vested quarterly over 3 years, and the vesting of 81,333 shares of which was accelerated in connection with Mr. Panoff entering into a separation agreement and release with the Company on September 15, 2014.

***Employment Agreements***

*Shkreli Employment Agreement and Summary Separation Proposal*

On December 16, 2013, the Company entered into an employment agreement with Mr. Shkreli (the "Shkreli Employment Agreement"), pursuant to which Mr. Shkreli served as the Company's Chief Executive Officer.

In accordance with the terms of the Shkreli Employment Agreement, Mr. Shkreli was paid (i) a base salary in the amount of $300,000, and (ii) at the sole discretion of the Board of Directors, an annual bonus award based upon specific goals and performance metrics. Mr. Shkreli was also awarded options to purchase 1,080,000 shares of restricted common stock of the Company, a pro rata portion of which vested quarterly over 3 years.

On February 24, 2014, Mr. Shkreli received discretionary awards of options to purchase an aggregate of 400,000 shares of common stock of the Company, (i) 200,000 of which vested in twelve equal installments on the last day of each calendar quarter beginning on March 31, 2014, (ii) 100,000 of which vested upon such time as the Company's revenues meet or exceed $50 million in the aggregate over any consecutive four fiscal quarter period (but no earlier than February 24, 2015), (iii) 50,000 of which vested upon such time as the trailing twenty day average of the closing price of the Company's common stock equals or exceeds $25 per share (but no earlier than February 24, 2015) and (iv) 50,000 of which vested upon such time as the trailing twenty day average of the closing price of the Company's common stock equals or exceeds $33 per share (but no earlier than February 24, 2016).

In connection with Mr. Shkreli's resignation, the Company and Mr. Skhreli entered into a binding Summary Separation Proposal, dated October 13, 2014, pursuant to which Mr. Shkreli is entitled to receive his annual base salary, any unpaid bonus and health insurance coverage on the same terms as made available to the Company's employees for a period of twelve months following such resignation, plus twelve months of continued vesting of all time-based stock options.

*Shih Employment Agreement*

On May 29, 2014, the Company entered into an employment agreement with Dr. Shih (the "Shih Employment Agreement"), pursuant to which Dr. Shih has served as the Executive Vice President of Research and Development of the Company since June 2, 2014.

In accordance with the terms of the Shih Employment Agreement, Dr. Shih will be paid (i) a base salary in the amount of $450,000, and (ii) an annual cash bonus award of up to 50% of Dr. Shih's then-applicable salary, which cash bonus is required to be not less than $100,000 for the fiscal year ending December 31, 2014. Dr. Shih was paid a signing bonus in the amount of $50,000, which Dr. Shih is required to repay to the Company if, prior to the one-year anniversary of his employment date, Dr. Shih terminates his employment or the Company terminates his employment for cause (as such term is defined in the Shih Employment Agreement). Dr. Shih was also awarded 230,000 shares of restricted common stock, a pro rata portion of which will vest quarterly during the 3 years following his employment date.

The Shih Employment Agreement contemplates that Dr. Shih's employment will be for a two-year term and may be automatically extended for successive one-year periods unless (i) Dr. Shih gives notice of non-extension to the Company no later than ninety (90) days prior to the expiration of the Shih Employment Agreement, (ii) Dr. Shih's employment is terminated or (iii) the Company delivers notice to Dr. Shih no later than thirty (30) days prior to the expiration of the Shih Employment Agreement.

In the event Dr. Shih's employment is terminated (i) by the Company other than for cause or a regulatory inquiry termination (as such term is defined in the Shih Employment Agreement) or (ii) by Dr. Shih's resignation following a material breach of a material term of the Shih Employment Agreement by the Company which has not been cured within 30 days following notice thereof, if such resignation occurs within 15 days at the end of the

11

applicable 30-day cure period, then Dr. Shih will be entitled to receive a severance payment in an amount equal to his annual base salary (as such term is defined in the Shih Employment Agreement), any expenses owed to him under the Shih Employment Agreement, accrued vacation pay and payment of incentive compensation (as such term is defined in the Shih Employment Agreement) payable on the same schedule as if Dr. Shih had remained employed by the Company. If Dr. Shih chooses to resign for reasons other than a material breach of the Shih Employment Agreement by the Company, then Dr. Shih will forfeit any unvested incentive compensation that he received and will not be entitled to severance or any additional payments.

If Dr. Shih's employment is terminated for cause then Dr. Shih will not be entitled to any further payments of any kind, except for payment of the base salary plus reimbursement of certain expenses.

In the event that Dr. Shih is no longer employed by the Company, any incentive compensation that has not vested prior to the date of termination will immediately be cancelled and not subject to further vesting.

*Panoff Employment Agreement and Severance Agreement*

On May 7, 2013, the Company entered into an employment agreement with Marc Panoff (the "Panoff Employment Agreement"), pursuant to which Mr. Panoff served as the Chief Financial Officer and Chief Accounting Officer of the Company. In accordance with the terms of the Panoff Employment Agreement, Mr. Panoff was paid (i) a base salary in the amount of $230,000 (subject to adjustments at the discretion of our Board of Directors), and (ii) at the sole discretion of our Board of Directors, an annual bonus award of up to 50% of Mr. Panoff's then applicable base salary.

On September 15, 2014, the Company entered into a separation agreement and release (the "Separation Agreement") with Mr. Panoff, pursuant to which Mr. Panoff's employment with the Company will terminate, effective as of February 28, 2015 (the "Separation Date"). Under the terms of the Separation Agreement, Mr. Panoff will be entitled to receive: (i) severance payments equal to six months of his current base salary; (ii) 100% of his target bonus for 2014; (iii) accelerated vesting of 81,333 shares of restricted common stock of the Company; and (iv) benefits under the Company's benefit plans, subject to the terms of each such plan, for the period commencing immediately after the Separation Date and ending on the date that is the earlier of (A) nine months following the Separation Date and (B) Mr. Panoff's acceptance of new employment which offers benefits.

### Outstanding Equity Awards At Fiscal Year End

| | | Option Awards | | | | Stock Awards | |
| | | | | | | Number of | |
| | | Number of Securities Underlying Unexercised | Number of Securities Underlying Unexercised | Option Exercise | Option Expiration | Shares or Units of Stock That | Market Value of Shares or Units of Stock That |
| Name | Grant Date | Options (#) Exercisable | Options (#) Unexercisable | Price ($) | Date | Have Not Vested (#) | Have Not Vested ($) |
|---|---|---|---|---|---|---|---|
| Stephen Aselage | 11/6/2014 | — | 300,000(2) | 10.09 | 11/6/2024 | — | — |
| | 11/6/2014 | — | — | — | — | 100,000(3) | $ 1,009,000 |
| Martin Shkreli | 2/24/2014 | 66,667(4) | 133,333(4) | $ 19.00 | 2/24/2024 | — | — |
| Alvin Shih | 6/1/2014 | — | — | — | — | 191,667(5) | $ 2,637,908 |
| Margaret Valeur-Jensen | 11/17/2014 | — | — | — | — | 100,000(7) | $ 945,000 |
| Marc Panoff | 5/20/2013 | — | — | — | — | 70,000(1) | $ 490,000 |
| | 2/24/2014 | — | — | — | — | 75,000(6) | $ 1,425,000 |

(1)   Such shares vest in quarterly installments during the 3 years following the date of grant.
(2)   Such shares vest in four equal quarterly installments starting on the one-year anniversary of the date of grant.

(3)    Such shares vest on the one-year anniversary of the date of grant.

(4)    Such shares vest over a period of twelve calendar quarters beginning on March 31, 2014.

(5)    A pro rata portion of the shares vest in quarterly installments during the 3 years following his employment date.

(6)    Such shares vest in quarterly installments during the 3 years following his employment date.

(7)    Such shares vest on November 1, 2015.

## DIRECTOR COMPENSATION

The following table sets forth in summary form information concerning the compensation that was earned by each of our non-employee directors during the year ended December 31, 2014.

| Name | Fees Earned or Paid in Cash ($) | Stock Awards ($)(1) | Option Awards ($)(1) | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|
| Cornelius Golding | 18,750 | 201,800 | 252,250 | — | 472,800 |
| Jeffrey Paley | 18,750 | — | — | — | 18,750 |
| Steve Richardson | — | 201,800 | 252,250 | — | 454,050 |
| Gary Lyons | — | 209,600 | 307,800 | — | 517,400 |
| Jeffrey Meckler | — | 209,600 | 307,800 | — | 517,400 |

(1)    In accordance with SEC rules, this column reflects the aggregate grant date fair value of the equity awards granted during 2014 computed in accordance with Financial Accounting Standard Board Accounting Standards Codification Topic 718 for stock-based compensation transactions (ASC 718). These amounts do not reflect the actual economic value that will be realized by the director in connection with such equity awards.

Our Board of Directors has adopted a compensation policy applicable to all of our non-employee directors that provides that each such non-employee director receives the following compensation for service on our Board of Directors:

- an annual cash retainer of $45,000;

- an additional annual cash retainer of $11,250 for service as chairman of the Board of Directors;

- an additional annual cash retainer of $10,000 for service as a member of the Audit Committee ($15,000 for service as the chairman of the Audit Committee), $7,500 for service as a member of the Compensation Committee ($10,000 for service as the chairman of the Compensation Committee), and $5,000 for service as a member of the Nominating and Corporate Governance Committee ($7,500 for service as the chairman of the Nominating and Corporate Governance Committee);

- upon first joining our Board of Directors, an automatic initial grant of an option to purchase 40,000 shares of our common stock and 20,000 restricted shares of common stock; and

- for each non-employee director whose term continues on the date of our annual meeting each year, an automatic annual grant of an option to purchase 20,000 shares of our common stock and 10,000 restricted shares of common stock.

Each of the initial equity grants under our director compensation policy described above vests over a three year period following the date of grant, subject to the director continuing to provide services to us during such period. Each of the annual equity grants under our director compensation policy described above vests over a one year period following the date of grant, subject to the director continuing to provide services to us during such period.

13

## COMPENSATION COMMITTEE INTERLOCKS AND INSIDER PARTICIPATION

No member of the Compensation Committee of our Board of Directors has ever been our officer or employee nor has anyone who was a member in 2014 had a relationship with us requiring disclosure as a transaction with a related person. None of our executive officers currently serves, or has served during the last completed fiscal year, on the Compensation Committee or Board of Directors of any other entity that has one or more executive officers serving as a member of our Board of Directors or Compensation Committee.

14

## HOUSEHOLDING OF PROXY MATERIALS

The SEC has adopted rules that permit companies and intermediaries (e.g., brokers) to satisfy the delivery requirements for our proxy materials with respect to two or more stockholders sharing the same address by delivering a single set of proxy materials addressed to those stockholders. This process, which is commonly referred to as "householding," potentially means extra convenience for stockholders and cost savings for companies.

A number of brokers with account holders who are Retrophin stockholders will be "householding" our proxy materials. A single set of proxy materials will be delivered to multiple stockholders sharing an address unless contrary instructions have been received from the affected stockholders. Once you have received notice from your broker that they will be "householding" communications to your address, "householding" will continue until you are notified otherwise or until you revoke your consent. If, at any time, you no longer wish to participate in "householding" and would prefer to receive a separate proxy statement and annual report, please notify your broker, direct your written request to Retrophin, Inc., Secretary, 12255 El Camino Real, Suite 250, San Diego, CA 92130. Stockholders who currently receive multiple copies of proxy materials at their address and would like to request "householding" of their communications should contact their broker.

## ANNUAL REPORT

A copy of our Annual Report on Form 10-K for the fiscal year ended December 31, 2013, filed with the SEC on March 28, 2014, is available without charge upon written request to: Retrophin, Inc., Secretary, 12255 El Camino Real, Suite 250, San Diego, CA 92130.

## OTHER MATTERS

The Board of Directors knows of no other matters that will be presented for consideration at the Special Meeting. If any other matters are properly brought before the Special Meeting, it is the intention of the persons named in the accompanying proxy to vote on such matters in accordance with their best judgment.

By Order of the Board of Directors


/s/ Margaret Valeur-Jensen
Margaret Valeur-Jensen, Ph.D., J.D.
*General Counsel*

San Diego, California
January 23, 2015

APPENDIX A

## Stock Options [1]

| Recipient | Grant Date | Shares Subject to Option | Exercise Price | Expiration Date |
|---|---|---|---|---|
| Shlomo Ovadia | 5/9/2014 | 20,000 | $11.47 | 5/8/2024 |
| Steve Rodems | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| Tracy Kane | 5/9/2014 | 20,000 | $11.47 | 5/8/2024 |
| Tricia Sterling | 8/4/2014 | 60,000 | $10.76 | 8/3/2024 |
| Viral Desai | 8/18/2014 | 20,000 | $11.99 | 8/17/2024 |
| Vince Wintermute | 6/11/2014 | 50,000 | $11.30 | 6/10/2024 |
| Wayne Deats | 6/23/2014 | 15,000 | $11.63 | 6/22/2024 |
| William Vasilko | 8/11/2014 | 15,000 | $12.51 | 8/10/2024 |
| Atman Dholakia | 7/14/2014 | 5,000 | $11.10 | 7/13/2024 |
| Adrian Garcia | 8/4/2014 | 10,000 | $10.76 | 8/3/2024 |
| Anton Graves | 8/11/2014 | 15,000 | $12.51 | 8/10/2024 |
| Amanda Harring-Abbott | 2/24/2014 | 25,000 | $19.00 | 2/23/2024 |
| Andrew Hooper | 5/22/2014 | 50,000 | $13.26 | 5/21/2024 |
| Andrew Spaziani | 8/4/2014 | 15,000 | $10.76 | 8/3/2024 |
| Charlotte H. Brennand | 5/9/2014 | 25,000 | $11.47 | 5/8/2024 |
| Christopher Cline | 8/11/2014 | 40,000 | $12.51 | 8/10/2024 |
| Carianne Shaunessy | 8/11/2014 | 15,000 | $12.51 | 8/10/2024 |
| Charles Tyler | 5/9/2014 | 40,000 | $11.47 | 5/8/2024 |
| David Berlove | 8/11/2014 | 20,000 | $12.51 | 8/10/2024 |
| Dyan Bryson | 6/30/2014 | 50,000 | $11.74 | 6/29/2024 |
| Danhua Chen | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| Dainius Macikenas | 7/3/2014 | 15,000 | $12.82 | 7/2/2024 |
| Dean Wagner | 7/7/2014 | 10,000 | $11.80 | 7/6/2024 |
| Edward Kallel | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| Elizabeth Aselage | 7/1/2014 | 2,500 | $12.31 | 6/30/2024 |
| Elena Korobetskaya | 2/24/2014 | 40,000 | $19.00 | 2/23/2024 |
| Jonathan Ariza | 6/16/2014 | 5,000 | $11.25 | 6/15/2024 |
| Joseph Battaglia | 8/1/2014 | 10,000 | $10.53 | 7/31/2024 |
| Juan Betanzo | 5/9/2014 | 25,000 | $11.47 | 5/8/2024 |
| Jordan Brown | 7/1/2014 | 7,500 | $12.31 | 6/30/2024 |
| John Fiorito | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| John Leach | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| Josephine Matta | 6/16/2014 | 60,000 | $11.25 | 6/15/2024 |
| John Ridge | 6/9/2014 | 50,000 | $11.20 | 6/8/2024 |
| Jenna Swan | 8/18/2014 | 5,000 | $11.99 | 8/17/2024 |
| Kristina Capiak | 5/9/2014 | 10,000 | $11.47 | 5/8/2024 |
| Kimberly Langenbach | 7/14/2014 | 40,000 | $11.10 | 7/13/2024 |
| Katherine Lucey | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |
| Kattherine Monahan | 5/14/2014 | 40,000 | $13.02 | 5/13/2024 |
| Karl Odquist | 6/23/2014 | 50,000 | $11.63 | 6/22/2024 |
| Kale Ruby | 6/9/2014 | 50,000 | $11.20 | 6/8/2024 |
| Leah Cutler | 8/18/2014 | 1,500 | $11.99 | 8/17/2024 |
| Martha Ho-Sing-Loy | 5/9/2014 | 50,000 | $11.47 | 5/8/2024 |

---

[1]   Unless otherwise specified in the applicable award agreement, each stock option granted under the Company's 2014 Incentive Compensation Plan vests and becomes exercisable pro rata, on a quarterly basis, during the three years following the grant date of such stock option.

A-1

| Recipient | Grant Date | Shares Subject to Option | Exercise Price | Expiration Date |
|---|---|---|---|---|
| Meghan Kelly | 2/24/2014 | 25,000 | $19.00 | 2/23/2024 |
| Moorthy Palanki | 5/19/2014 | 50,000 | $13.10 | 5/18/2024 |
| Maria Quinton | 5/9/2014 | 20,000 | $11.47 | 5/8/2024 |
| Mabel Tse | 5/14/2014 | 50,000 | $13.02 | 5/13/2024 |
| Patricia Brady | 5/22/2014 | 40,000 | $13.26 | 5/21/2024 |
| Prashant Raykar | 8/7/2014 | 10,000 | $11.74 | 8/6/2024 |
| Ross Goldstein | 6/24/2014 | 40,000 | $11.63 | 6/23/2024 |
| Andrew Savage | 8/18/2014 | 75,000 | $11.99 | 8/17/2024 |
| Brian Selby | 2/24/2014 | 50,000 | $19.00 | 2/23/2024 |
| Brian Selby | 5/9/2014 | 25,000 | $11.47 | 5/8/2024 |
| Jesse Shefferman | 5/9/2014 | 100,000 | $11.47 | 5/8/2024 |
| Paul Stylianou | 7/7/2014 | 100,000 | $11.80 | 7/6/2024 |
| Radko Komers | 5/9/2014 | 60,000 | $11.47 | 5/8/2024 |
| Sonja Paige-Kirkwood | 7/1/2014 | 1,500 | $12.31 | 6/30/2024 |

### Restricted Common Stock [2]

| Recipient | Grant Date | Shares Subject to Award |
|---|---|---|
| Alvin Shih | 6/1/2014 | 230,000 |

[2]   This restricted stock award vests in equal quarterly installments starting on July 1, 2014 and ending on July 1, 2017.

A-2

PROXY

# RETROPHIN, INC.

PROXY FOR SPECIAL MEETING OF STOCKHOLDERS TO BE HELD ON FEBRUARY 3, 2015.
THIS PROXY IS SOLICITED ON BEHALF OF RETROPHIN, INC.

Only stockholders of record at the close of business on January 13, 2015 are entitled to notice of, and to vote at the meeting and any adjournment or postponement thereof.

THIS PROXY WILL BE VOTED IN ACCORDANCE WITH THE INSTRUCTIONS GIVEN BELOW. IF NO INSTRUCTION IS GIVEN THE PROXY WILL BE VOTED FOR THE PROPOSAL.

FOR   AGAINST   ABSTAIN

☐       ☐           ☐

Ratification of the company's prior issuance of stock options to purchase 1,928,000 shares of common stock and 230,000 restricted shares of common stock granted to employees between February 24, 2014 and August 18, 2014, as required pursuant to the Listing Rules of the Nasdaq Stock Market LLC ("Nasdaq"), in order to allow the company to regain compliance with such Nasdaq Listing Rules.

**Signature** _____ **Signature if held jointly** _____ **Dated** _____ , **2015**
Please sign exactly as name appears heron. When shares are held by joint tenants, both should sign. When signing as attorney, executor, administrator, trustee or guardian, please give full title as such. If a corporation, please sign in full corporate name by President or other authorized officer. If a partnership, please sign in partnership name by authorized person.

Please mark, date, sign, and return promptly by mail (return envelope enclosed), email (to amy@standardregistrar.com) , or facsimile (to 801-571-2551).