

Ian Shapiro
+1 212 479 6441
ishapiro@cooley.com

May 5, 2015

Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

       Re:  In re Retrophin, Inc. Securities Litigation, No. 14-cv-08376

Dear Judge Castel:

      We represent Defendants Retrophin, Inc. ("Retrophin" or the "Company") and certain
members of the current board of directors:  Steve Aselage, Steve Richardson, and Neil Golding (the
"Current Director Defendants").  We are writing to set forth some of the principal grounds on which
we anticipate moving to dismiss the Plaintiffs' First Amended Consolidated Complaint ("FACC").

I.      Background

      As set forth in the FACC, Retrophin LLC was formed by Defendant Martin Shkreli in 2011.
(FACC at ¶ 2.)  At the time he formed the Company, Mr. Shkreli was also operating two hedge
funds:  MSMB Capital Management and MSMB Health Care, Inc. (the "MSMB Entities").  (FACC
at ¶ 3.)  In December 2012, Retrophin became a public company through a reverse merger with a
shell company.  (FACC at ¶ 32.)

      According to the FACC, the Company disclosed on September 30, 2014 that its board of
directors had terminated Mr. Shkreli from his position as CEO and appointed Mr. Aselage as
interim CEO (in fact, Mr. Shkreli had resigned).  (FACC at ¶ 10.)  In the aftermath of Mr. Shkreli's
departure, the board also replaced the Company's CFO, appointed a general counsel, and appointed
two new independent directors. (FACC at ¶ 140.)

      Shortly after Mr. Shkreli left Retrophin, the Company's management reported that it had
made previously undisclosed stock and option grants to certain employees and that these grants
qualified as "inducement awards" pursuant to Rule 5635(b)(4) of the NASDAQ Listing Rules.
(FACC at ¶ 133.)  Subsequently, on December 15, 2014, the Company disclosed in a Form 8-K that
it had received a letter from NASDAQ indicating that NASDAQ had determined that the stock
grants did not qualify as inducement awards, and therefore that by issuing such grants without
stockholder approval Retrophin had failed to comply with NASDAQ Listing Rule 5635(c).  (FACC
at ¶ 136.)  On January 23, 2015, the Company filed a Definitive Proxy Statement in advance of a
special meeting of Retrophin's shareholders in which it acknowledged that its stock grants did not
comply with Listing Rule 5635(c) and asked the shareholders to ratify the grants.  (FACC at ¶ 138.)
On February 3, 2015, the Company disclosed that the shareholders ratified the stock grants.  (FACC
at ¶ 139.)

Honorable P. Kevin Castel
May 5, 2015
Page Two

In the aftermath of each of these disclosures relating to the stock grants, the Company's stock price rose.[1]

Subsequently, on February 20, 2015, the Company disclosed in a Form 8-K that it had made errors in accounting for the now-ratified stock grants but that those errors did not cause the Company's previously filed financial statements to be misleading, and therefore they could still be relied upon.  The Company also disclosed that its outside legal counsel had conducted an investigation of certain consulting and settlement agreements entered into by the Company during Mr. Shkreli's tenure and that an Oversight Committee appointed by the board to supervise the investigation had made certain findings.  In particular, the Oversight Committee concluded that a number of consulting agreements, settlement agreements, and other transactions benefitted the MSMB Entities or Mr. Shkreli personally (the "Related-Party Transactions").

In the aftermath of the February 20, 2015 disclosures of the Related-Party Transactions, the Company's stock price rose once again.

II.     The Non-Disclosure of the Stock Grants and Related-Party Transactions Cannot Support  a Claim for Securities Fraud

The FACC is based entirely on the Company's self-reporting of the stock grants and the Related-Party Transactions.  The FACC alleges seven material omissions.  But, as set forth below, none of these alleged omissions supports the FACC's securities fraud claims because the Plaintiff has failed to plead loss causation.  When the stock grants and Related-Party Transactions were revealed to the market, the Company's stock price rose.  The Plaintiff has also failed to plead scienter with respect to any of these alleged omissions.

    A.      The Stock Grants

The FACC alleges one omission relating to the stock grants.  Specifically, the FACC alleges that the Company's public filings, beginning with its Form 10-K for 2013 which was filed on March 28, 2014, were false and misleading because they failed to disclose that "Retrophin's founder and Chief Executive Officer was committing stock-trading irregularities during the Class Period," that "said irregularities included grants of Retrophin stock to certain recipients without shareholder approval," and that "as a result of the above, Defendants committed violations of the company's Incentive Compensation Plan and other securities rules, including NASDAQ Listing Rules." (FACC at ¶¶ 102(ii) & (iii); 105(ii), (iii) & (v); 110(ii) & (iii); 114(ii), (iii) & (v).)

However, the FACC fails to state a securities fraud claim because it does not plead any loss causation.  The FACC alleges a series of supposedly corrective disclosures in paragraphs 118 to 146.  But every disclosure relating to the Company's stock grants was followed by an *increase* in the stock price.  In particular, the FACC alleges that on October 2, 2014, Bloomberg published an

---

[1] All data on changes in Retrophin's historical share price comes from Yahoo Finance, http://finance.yahoo.com/q/hp?s=RTRX+Historical+Prices.

Honorable P. Kevin Castel
May 5, 2015
Page Three

article entitled "Biotech Company Retrophin fired CEO Because of Stock Irregularities," which reported that Retrophin's board concluded that Shkreli had committed stock-trading irregularities and other violations of securities laws. (FACC at ¶ 132.) On the day this story was published, the Company's stock price rose—and it continued to rise on the following two trading days.

The next disclosure the FACC alleges of the alleged omission relating to the stock grants is the Company's Form 8-K on December 15, 2014 disclosing that the Company was out of compliance with NASDAQ listing requirements. (FACC at ¶ 136.) The Company's stock price rose following this disclosure as well.

The FACC also alleges two additional disclosures relating to this alleged omission: the January 23, 2015 Definitive Proxy Statement "admitting to these stock grant irregularities," and the February 3, 2015 press release "announcing that the Company's stockholders voted to approve a proposal ratifying the prior issuance of stock options." (FACC at ¶¶ 138, 139.) In both cases, the Company's stock price rose following the disclosures.

In short, the FACC fails to identify any disclosure that revealed the alleged truth about the so-called stock grant irregularities that was followed by a diminution in the stock price. Thus, the Plaintiff has failed to plead any loss causation, and these omissions cannot support a claim for securities fraud. *See Waters v. Gen. Elec. Co.*, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 47 F. App'x 229 (2d Cir. 2011) ("The Court cannot find, and Plaintiffs have not cited, a single section 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price *increased* after an announcement revealing an alleged fraud.") (emphasis in original).

Nor does the FACC plead any facts that would support an inference that the Company's failure to disclose these stock grants was intended to mislead investors. To the contrary, the Company's initial disclosure of these grants on October 3, 2014 as "inducement grants" that were exempt from shareholder approval suggests that the Company simply made a mistake about the applicable NASDAQ listing requirements. (FACC at ¶ 116.) Thus, the Plaintiff has failed to plead scienter. *See Lewy v. SkyPeople Fruit Juice*, 2012 WL 3957916, at *19 (S.D.N.Y. Sept. 10, 2012) (Castel, J.) (granting motion to dismiss where "the disclosure failure was more likely an oversight than an attempt to deceive").[2]

B.     The Related-Party Transactions

The FACC alleges five omissions related to the Related-Party Transactions. Specifically, the FACC alleges that the Company's public filings beginning at various times in the case of each alleged omission were false and misleading because they failed to disclose the following: (1) consulting agreements entered into between September 2013 and March 2014 that were intended to

---

[2] None of the "red flags" described in paragraphs 60-79 are even related to the stock grants, and none of the FACC's "Additional Scienter Allegations" suggest that any of the Defendants received any personal or concrete benefits from the failure to disclose the Company's stock grant non-compliance. (FACC at ¶¶ 147-156.)

Honorable P. Kevin Castel
May 5, 2015
Page Four

settle claims against MSMB and Shkreli personally (FACC at ¶¶ 89, 93, 97, 102, 105, 110, 114); (2) a $300,000 settlement agreement entered into with a former MSMB investor (FACC at ¶¶ 89, 97); (3) a settlement agreement that called for the issuance of 80,000 Company shares to an MSMB investor (FACC at ¶¶ 89, 97); (4) payment on a $900,000 promissory note in favor of MSMB and payment or forgiveness of $1.2 million in other obligations for the benefit of the MSMB Entities and Shkreli (FACC at ¶¶ 83, 86, 93, 97, 102, 105, 114); and (5) litigation settlements in which the Company paid $200,000 in cash to individuals to transfer 176,388 shares of Retrophin common stock directly to Shkreli (FACC at ¶¶ 105, 114).

However, as with the omissions relating to the stock grants, the FACC fails to state a securities fraud claim on any of these alleged omissions because it again fails to plead loss causation. The FACC identifies only the February 20, 2015 Form 8-K as a disclosure pertinent to these alleged omissions (FACC ¶ 141), and the Company's stock price rose on the filing of this 8-K.

Recognizing the absence of any disclosures relating to these five Related-Party Transactions that were followed by a decline in stock price, the FACC invokes a series of *unrelated* disclosures that *were* followed by declines: the Company's disclosure it had terminated its auditor, Marcum (FACC at ¶ 121); the disclosure that the employment of the Company's CFO, Marc Panoff, had been terminated (FACC at ¶ 125); and the disclosure that one of its directors, Jeff Paley, had resigned (FACC at ¶ 125). Similarly, the FACC invokes the Company's disclosure that it had "terminated" Shkreli's employment. (FACC at ¶ 129.) While all of these disclosures were followed by declines in stock price, none of them revealed the alleged truth about the Related-Party Transactions, and therefore they are insufficient to carry the Plaintiff's burden of pleading loss causation. *See Police & Fire Ret. Sys. v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 230 (S.D.N.Y. 2009) (holding that a stock drop following announcement of the CFO's departure was insufficient to support loss causation where not expressly connected to the alleged omission). *See also In re Omnicom Group, Inc. Sec. Litig.*, 597 F.3d 501, 511 (S.D.N.Y. 2010) (holding the same with regard to the resignation of a director).

The FACC also invokes a series of internet posts and newspaper articles about the Company that were followed by declines in stock price. (FACC at ¶¶ 123, 127, 134.) But none of these published reports reveals the truth about any of the alleged omissions, and therefore they do not establish loss causation.[3] *See Police & Fire*, 645 F. Supp. 2d at 229-30 (holding that a stock drop following generalized allegations of misconduct was insufficient to support loss causation where the allegations were too vague to provide investors with notice of the specific fraudulent conduct).[4]

---

[3] The FACC invokes a May 28, 2014 Seeking Alpha article that refers to certain related-party transactions and consultants receiving large amounts of Retrophin stock. (FACC at ¶ 123.) But the article cites specific pages of the Company's previously filed 2013 Form 10-K for those references, and therefore they cannot be described as "corrective disclosures" that establish loss causation.

[4] The FACC also alleges one other omission of a related-party transaction described in the February 20, 2015 Form 8-K. Specifically, the FACC alleges that two of the Company's public filings, the Form 10-K for 2012 (filed on June 13, 2013) and Form 10-Q for the first quarter of 2013 (filed on

Honorable P. Kevin Castel
May 5, 2015
Page Five

III.    **The FACC Fails to Plead Scienter With Respect to Any of the Current Director
Defendants**

The FACC alleges only that the Current Director Defendants signed the June 2013 Form 10-
K and the September 2013 Form10-K/A.  Therefore, the FACC has failed to plead that the Current
Director Defendants are responsible for the non-disclosures in any of the Company's other public
filings. *See City of Roseville Emples. Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417
(S.D.N.Y. 2011).  Only the Related-Party Transactions are implicated by those two public filings,
and the Plaintiff has failed to plead any personal or concrete benefits received by the Current
Director Defendants by failing to disclose the Related-Party Transactions in those two filings.  Nor
has the Plaintiff alleged any conscious misbehavior or recklessness concerning those Transactions
and those filings.  None of the "red flags" the Plaintiff alleges even relates to the facts allegedly
omitted from those filings.

\*\*\*

For the foregoing reasons, Defendants intend to file a motion to dismiss the FACC and
propose the following briefing schedule:  (1) Defendants file their motion(s) to dismiss on or before
July 20, 2015; (2) Plaintiff files his opposition on or before September 3, 2015; and (3) Defendants
file a reply on or before October 3, 2015.

Sincerely,

Ian Shapiro

cc:      All counsel via ECF

---

July 24, 2013), failed to disclose "settlement agreements that were entered into between April 2013
and June 2013." (FACC at ¶¶ 83, 86.)  The FACC acknowledges that these early 2013 settlement
agreements were all disclosed in amended financial statements filed with the SEC on September 13,
2013. (FACC ¶ 119.)  The alleged omission of these settlement agreements for three months
between June and September 2013 cannot support a securities fraud claim because the Plaintiff has
failed to plead any personal or concrete benefit received by any of the individual defendants as a
result of the Company's failure to disclose these transactions for three months. (FACC at ¶¶ 147-
156.)  Nor does the FACC plead any facts reflecting their conscious misbehavior or recklessness
regarding the disclosure of these early 2013 settlement agreements.  None of the alleged red flags
even remotely relate to these transactions. (FACC at ¶¶ 60-79.)