# ARNOLD & PORTER LLP

Elissa J. Preheim
Elissa.Preheim@aporter.com

+1 202.942.5503
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

May 5, 2015

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

   Re: *In re Retrophin, Inc. Securities Litigation*, No. 14-cv-8376 (PKC)

Dear Judge Castel:

  We represent Defendant Martin Shkreli in the above-captioned matter. In accordance with the Court's Individual Rule of Practice 2.A.1 and the March 30, 2015 Stipulation and Order Regarding Pre-Motion Letters, we submit this pre-motion letter in advance of the June 4, 2015 Initial Pre-trial Conference. Mr. Shkreli anticipates moving to dismiss the First Amended Consolidated Complaint ("Complaint" or "Compl.") pursuant to F.R.C.P. Rules 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act (the "PSLRA"), and proposes the following briefing schedule for the proposed motion: opening brief due July 20, 2015; opposition due September 3, 2015; and reply due October 5, 2015. Without waiving Mr. Shkreli's rights to advance additional arguments, we set forth below a short summary of the primary legal and factual bases of the anticipated motion.

  Plaintiffs bring this purported class action on behalf of all purchasers of Retrophin, Inc. ("Retrophin") securities from June 13, 2013 through September 30, 2014 who were purportedly damaged upon revelation of alleged corrective disclosures. Plaintiffs allege that Retrophin, former director and Chief Executive Officer Mr. Shkreli, and several other current and former Retrophin officers and directors violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, and are subject to control person liability under Section 20(a). While Plaintiffs attempt to divert attention from the legal and pleading deficiencies of their Complaint with allegations unrelated to their fraud claims, their fraud claims are based on (i) certain issuances of Retrophin stock to employees in alleged violation of NASDAQ listing rules; and (2) certain related party transactions. Plaintiffs' Complaint fails as a matter of law for several reasons, including failure to plead loss causation, and failure to plead a "strong" inference of scienter.

# ARNOLD & PORTER LLP

May 5, 2015
Page 2

I. **Plaintiffs' Allegations Regarding Stock Issuances Fail To State a Claim for Securities Fraud Under Section 10(b) and Rule 10b-5**

Plaintiffs allege that, beginning in early 2014, Retrophin granted stock options to certain employees without shareholder approval, believing that such issuances qualified as "inducement awards" not subject to shareholder approval under NASDAQ listing rules. NASDAQ later informed Retrophin that such issuances did not so qualify. Accordingly, pursuant to a plan approved by NASDAQ, Retrophin submitted a proposal to its shareholders to ratify the issuances, which the shareholders approved. The Complaint fails to state a claim against Mr. Shkreli.

As an initial matter, failure to disclose a violation of stock exchange rules alone does not establish a Section 10(b)(5) violation. *See, e.g.*, *United States v. Finnerty*, 533 F.3d 143, 151 (2d Cir. 2008) (noting that "violation of an NYSE rule does not establish securities fraud in the civil context"); *Weinraub v. Glen Rauch Sec., Inc.*, 399 F. Supp. 2d 454, 462 (S.D.N.Y. 2005), *aff'd*, 180 F. App'x 233 (2d Cir. 2006). Further, Plaintiffs allege that Defendants initially believed the stock grants to comply with NASDAQ rules, and "[a] statement believed to be true when made, but later shown to be false, is insufficient" to state a Section 10(b) claim. *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014); Compl. ¶ 138.

Second, the Complaint fails to plead loss causation. Plaintiffs cannot state a securities fraud claim where the complaint fails to allege that the share price fell significantly after the truth became known. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Notably, Plaintiffs' Complaint does not include any allegation that Retrophin's stock price dropped upon the alleged "corrective" disclosure of non-compliance with NASDAQ listing rules. In fact, the stock price *increased* the trading day after Retrophin announced NASDAQ's determination that the stock issuances did not qualify as inducement awards — share price data of which this Court can take judicial notice. *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 715 n.50 (S.D.N.Y. 2013).

Third, the Complaint fails to satisfy the requirements of Rule 9(b) and the PSLRA for pleading scienter as to Mr. Shkreli. Among other reasons, group pleading is unavailable for scienter allegations, and the Complaint alleges no particularized facts giving rise to the requisite "strong inference" of Mr. Shkreli's scienter. *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 379 (S.D.N.Y. 2004) (citation omitted). Indeed, the Complaint alleges compensation decisions were made solely by the compensation

# ARNOLD & PORTER LLP

May 5, 2015
Page 3

committee, of which the Complaint does not (and cannot) allege that Mr. Shkreli was a member.

## II. Plaintiffs' Allegations Regarding Related Party Transactions Fail To State a Claim for Securities Fraud Under Section 10(b) and Rule 10b-5

Plaintiffs also assert fraud predicated on consulting and settlement agreements allegedly designed to benefit Mr. Shkreli that were not disclosed as related party transactions, and which Plaintiffs characterize as self-dealing, usurpation of corporate opportunities and breaches of fiduciary duty. *See, e.g.*, Compl. ¶¶ 5, 56 & pp. 15-16. First, it is well established that Section 10(b) cannot be used to challenge fiduciary conduct absent allegations of "manipulation," a term of art that includes practices "intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green.*, 430 U.S. 462, 476-77 (1977). Here, Plaintiffs do not allege any particularized facts of manipulation by Mr. Shkreli. *See id.*; *see also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 375-76 (allegations of mismanagement not actionable under Section 10(b)).

Second, the Complaint fails to plead the requisite loss causation, failing to show, as it must, a "correlation" between "revealed facts" regarding the alleged related party transactions and a decline in stock price. *In re Sec. Capital Assur. Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 599 (S.D.N.Y. 2010). Crucially, the Complaint fails to allege that the share price fell in response to the February 20, 2015 Form 8-K, which Plaintiffs allege revealed the full "truth" regarding the alleged related party transactions, Compl. ¶¶ 51, 141-44. In fact, the share price *increased* the following trading day. Consequently, Plaintiffs fail to plead loss causation.

Other allegedly "corrective" disclosures identified in the Complaint have no nexus to the related party transactions at issue. The fact that the stock price may have declined after such disclosures therefore cannot be the basis for pleading loss causation. *Santa Fe*, 544 U.S. at 342-43. While Plaintiffs allege that the stock price fell on the filing of the Company's 2013 Form 10-K/A and in response to the May 28, 2014 Seeking Alpha article, *see* Compl. ¶¶ 119-20 (Sept.13, 2013 Form 10-K/A); *id.* ¶¶ 123-24 (May 28, 2014 article), the Complaint fails to mention that the following trading day, the share price closed *higher* than it was before each respective "corrective" disclosure. Even if both could be considered "corrective" disclosures with respect to the related party transactions, such immediate (and unexplained) rebounds in price render loss causation implausible. *See In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011). *See also Sec. Capital*, 729 F. Supp. 2d at 602 (finding that Plaintiff's cherry-

# ARNOLD & PORTER LLP

May 5, 2015
Page 4

picking of dates where the stock price dropped the following day failed to show loss causation where the share price did not respond consistently with purported disclosures and price movement could be explained by "market noise").

   Finally, Plaintiffs fail to allege particularized facts giving rise to a "strong" inference of Mr. Shkreli's scienter. "To qualify as 'strong,' the 'inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Ross v. Lloyds Banking Group, PLC*, No. 11 Civ. 8530, 2012 WL 4891759, at *5 (S.D.N.Y. Oct. 16, 2012) (citation omitted). While allegations of knowledge or concrete personal benefit may be sufficient to plead scienter in certain circumstances, here the Complaint itself contains allegations of nonfraudulent intent, including that Retrophin had previously disclosed certain of the agreements at issue, and that Mr. Shkreli understood every transaction was "done with outside counsel's blessing . . . board approval and made good corporate sense." Compl. ¶ 145. Plaintiffs' allegations do not give rise to the requisite strong inference:

- Plaintiffs allege that all Defendants were motivated to keep Retrophin's stock artificially inflated to facilitate debt and loan agreements, acquisitions, and the issuance of stock options. Such alleged motive is not the type of particularized facts necessary to plead scienter. *See In re Citigroup*, 330 F. Supp. 2d at 380.

- The allegations regarding Shkreli's scienter based on newspaper articles and blog posts are insufficiently particularized and unreliable. *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 563 (S.D.N.Y. 2004).

- Similarly, allegations based on Retrophin's February 20, 2015 Form 8-K are insufficiently particularized to plead scienter. *See City of Brockton Retirement Sys. v. Avon Prods., Inc.*, No. 11 Civ. 4665, 2014 WL 4832321 (S.D.N.Y. Sept. 28, 2014). Statements now by Mr. Shkreli's former employer in its Form 8-K are not relevant to prove the truth of their contents. *Cf. Kramer*, 937 F.2d at 774. Further, the descriptions of the oversight committee's findings are conclusory and lack any facts from which a reader might infer that Mr. Shkreli knew such related party transactions were material or that he otherwise acted with scienter. *Cf. ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009). To the contrary, they indicate that at least certain of the alleged transactions had specific Board approval, and the Complaint acknowledges that the fact and nature of several of the alleged related party transactions had been previously disclosed in September 2013, *see, e.g.*, Compl. ¶¶ 88, 92, 101. That such transactions had previously

# ARNOLD & PORTER LLP

May 5, 2015
Page 5

> been publicly disclosed undercuts an inference of Mr. Shkreli's scienter, as does the Complaint's allegation that Mr. Shkreli understood the transactions were done for the benefit of Retrophin. *Id.* ¶ 145. The allegations do not give rise to a strong inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007).

- Finally, Plaintiffs' allegations of Mr. Shkreli's stock sales also fail to provide a strong inference of scienter. For example, Mr. Shkreli is alleged to have made a single sale during the class period, which was only a small percentage of his holdings, *see Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 54 (2d Cir.1995), and not unusual or suspicious in timing, *see Lirette v. Shiva Corp.*, 27 F. Supp. 2d 268, 283 (D. Mass. 1998). Further, the Complaint alleges that he owned more Retrophin stock at the class period's close than he owned at its commencement, *see Fishbaum v. Liz Claiborne, Inc.*, 189 F.3d 460, at *4 (2d Cir. 1999). Even if stock sales after the class period could give rise to scienter, Mr. Shkreli's sales of stock after leaving Retrophin were consistent with the "obvious alternative explanation" of liquidating holdings for the purpose of starting a new company. *See* Compl. ¶ 57; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80, 682 (2009) (citation omitted).

### III. Plaintiffs Fail to State a Section 20(a) Claim

Because Plaintiffs do not state a claim under Section 10(b), their Section 20(a) claim necessarily fails. *See Ironworkers Local 580—Joint Funds v. Linn Energy, LLC*, 29 F. Supp. 3d 400, 426 (S.D.N.Y. 2014) ("Plaintiffs must demonstrate primary liability under Section 10(b) and Rule 10b–5 before they can prove control-person liability.").

Respectfully submitted,

Elissa J. Preheim

cc:   Counsel of Record via ECF