UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
In re RETROPHIN, INC. Securities Litigation,   :
:
THIS DOCUMENT RELATES TO:   :
ALL ACTIONS   :
---------------------------------------- X

INDEX No. 1:14-cv-08376-PKC

CLASS ACTION

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANTS RETROPHIN, INC., STEPHEN ASELAGE, STEVEN RICHARDSON, AND CORNELIUS GOLDING**

Ian Shapiro
Stephanie B. Turner
COOLEY LLP
1114 AVENUE OF THE AMERICAS
NEW YORK, NY 10036
(212) 479-6000

*Attorneys for Defendants Retrophin, Inc., Stephen Aselage, Steven Richardson, and Cornelius Golding*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I. THE NON-DISCLOSURE OF THE 2013 SETTLEMENT AGREEMENTS CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM ................... 3

II. THE NON-DISCLOSURE OF THE COMPANY'S STOCK GRANT NON-COMPLIANCE CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM .......................................................................................................... 4

    A. Loss Causation ........................................................................................... 5

    B. Falsity ......................................................................................................... 7

    C. Scienter ...................................................................................................... 8

III. THE NON-DISCLOSURE OF SHKRELI'S RELATED-PARTY TRANSACTIONS CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM ......................................................................................................... 10

    A. Loss Causation ......................................................................................... 10

    B. Scienter .................................................................................................... 13

IV. THE PLAINTIFF CANNOT MAKE OUT A CLAIM UNDER SECTION 20(A) ........ 15

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Alpern v. Utilicorp United, Inc.,
    1994 U.S. Dist. LEXIS 17529 (W.D. Mo. Nov. 14, 1994) ...................................................... 15

ATSI Communs., Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007) ...................................................................................................... 15

Belmont v. MB Inv. Partners, Inc.,
    708 F.3d 470 (3d Cir. 2013) .................................................................................................... 14

In re JPMorgan Chase & Co. Secs. Litig.,
    2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ......................................................... 15

In re Merrill Lynch Tyco Research Secs. Litig.,
    2004 U.S. Dist. LEXIS 2247 (S.D.N.Y. Feb. 18, 2004) ............................................................ 6

Omnicom Group, Inc. Secs. Litig.,
    597 F.3d 501 (2d Cir. 2010) .................................................................................................... 12

In re Tyco Int'l, Ltd. Multidistrict Litig.,
    2004 U.S. Dist. LEXIS 20733 (D.N.H. 2004) ........................................................................ 14

Waters v. Gen. Elec. Co.,
    2010 U.S. Dist. LEXIS 107720 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 47 F. App'x
    229 (2d Cir. 2011) ..................................................................................................................... 6

**PRELIMINARY STATEMENT**

The initial brief of Defendants Retrophin, Inc. ("Retrophin" or the "Company") and Stephen Aselage, Steven Richardson, and Cornelius Golding (the "Director Defendants") in support of their Motion to Dismiss explained that the First Amended Consolidated Complaint ("FACC") alleged that the Company's public filings were false and misleading as a result of the Company's non-disclosure of three sets of facts:

First, the FACC alleges that the Company's financial statements were false between June 13, 2013 and September 13, 2013 because the Company failed to disclose the 2013 Settlement Agreements.  See ¶ 83(ii)[1] ("Defendants engaged in, but did not disclose, numerous related party transactions including settlement agreements involving related parties that were entered into between April 2013 and June 2013 . . . .").

Second, the FACC alleges that the Company's financial statements and a proxy statement were false and misleading between March 28, 2014 and August 14, 2014 because the Company failed to disclose its Stock Grant Non-Compliance.  See, e.g., 102(ii) & (iii)(describing failure to disclose specific non-compliant grants and that "Defendants committed violations of the Company's Incentive Compensation Plan and other securities rules, including NASDAQ Listing Rules").  See also ¶¶ 105(ii) & (iii); 110(ii) & (iii); 114(ii), (iii) & (v); 115 (describing the same in relation to other public filings).

Third, the FACC alleges that the Company's financial statements were false and misleading between June 2013 and August 2014 because the Company's failed to disclose the Related-Party Transactions described in the Company's February 20, 2015 Form 8-K.  See ¶¶ 83(ii) (describing the Miscellaneous Related-Party Payments); 86(ii) (same); 89(1) & (2) (describing the Related-Party Consulting Agreements and Two Additional 2013 Settlement

---

[1] All references to "¶ __" are to the FACC.

Agreements); 93(ii)(1) & (2) (describing the Related-Party Consulting Agreements, Two Additional 2013 Settlement Agreements, and Miscellaneous Related-Party Payments); 97(ii)(1)–(4) (same); 102 (v)(1)–(3) (same); 105(vi) (describing all of Shkreli's Related-Party Transactions); 110 (describing the Related-Party Consulting Agreements, the Two Additional 2013 Settlement Agreements, and the Miscellaneous Related-Party Payments); 114(v) (describing all of Shkreli's Related-Party Transactions).

Defendants' initial brief addressed each of these non-disclosures, explaining why the FACC failed to allege one or more elements of a securities fraud claim against either the Company or the Director Defendants. In response, the Plaintiff's opposition brief failed to address many of these arguments, and where it has addressed them directly, the Plaintiff's response is weak and unconvincing.

In the case of the 2013 Settlement Agreements, the Company self-disclosed them in an amended Form 10-K within weeks of filing its initial Form 10-K for 2012, and the FACC fails to allege that anyone intentionally withheld their disclosure from the original Form 10-K.

The Company also self-disclosed its Stock Grant Non-Compliance and Shkreli's Related-Party Transactions in Form 8-Ks on December 15, 2014 and February 20, 2105, respectively. Yet, the FACC seeks to manufacture a securities fraud claim from these self-disclosures by attempting to tie them to unrelated, prior disclosures on or around dates on which there were stock drops. This Court should reject this contrivance because none of the alleged corrective disclosures even remotely revealed the substance of the Stock Grant Non-Compliance or Shkreli's Related-Party Transactions. See Defendants' Br. at 10-12, 18-23.

The Plaintiff has now had its chance to explain how any of the six corrective disclosures it alleged in the FACC revealed the substance of the alleged non-disclosures. But in ten pages of argument addressing Defendants' position on loss causation, the Plaintiff sidestepped that

imperative.  See Plaintiff's Br. at 40-50.  Instead, the Plaintiff attacked a series of straw men, and then offered halfhearted, conclusory defenses of only a few of the six alleged correct disclosures.  Thus, as it relates to the Stock Grant Non-Compliance and Shkreli's Related-Party Transactions, Plaintiff's opposition brief only confirmed that the FACC should not survive the pending motions to dismiss on loss causation.

## ARGUMENT

I. **The Non-Disclosure of the 2013 Settlement Agreements Cannot Support the Plaintiff's Securities Fraud Claim**

The only public filing or other statement that the FACC alleged was false or misleading as a result of the non-disclosure of the 2013 Settlement Agreements is the Company's Form 10-K for 2012, which was filed on June 13, 2013.  Thus, the only issue for this Court to decide is whether the omission of the 2013 Settlement Agreements from the 2012 Form 10-K was intended to deceive investors.

Defendants' initial brief explained that "[t]he 2012 Form 10-K was the Company's first Form 10-K, and the Company corrected its non-disclosure within three months when it filed an amended Form 10-K describing the settlement agreements in detail."  Defendants' Br. at 8.  The initial brief also explained that "[t]he FACC fails to allege that anyone at the Company knew these agreements should have been separately disclosed in the original 2012 Form 10-K and deliberately decided to exclude them from the 10-K."  Id.

Based on the Company's prompt correction of its first Form 10-K and the absence of any allegations of conscious misbehavior, Defendants' initial brief contended that the facts alleged in the FACC could only support the inference that a new public company inadvertently failed to disclose these transactions in its very first Form 10-K and promptly corrected its oversight.  Id. at 8-9.  This inference is especially compelling considering that the Settlement Agreements were executed in 2013, after the period addressed in the 2012 Form 10-K, and only needed to be

included because they were executed before the 2012 Form 10-K was filed and therefore qualified for inclusion in the "Subsequent Events" footnote. See id. Defendants' initial brief also argued that this inference was further corroborated by the fact that the Company's first CFO had been on the job for only two weeks when the Form 10-K was filed, and the Company began correcting its mistake soon after the new CFO's hiring. Id.

The Plaintiff's opposition brief does not address any of these arguments. In fact, it only addresses whether the non-disclosure of these 2013 Settlement Agreements was intended to deceive investors once, at the bottom of page 23, where the Plaintiff argues that "[a]s a direct beneficiary of the related-party transactions, Shkreli had actual knowledge of them. That is the hallmark of scienter." Plaintiff's Br. at 23. This alleged fact is insufficient to establish Defendants' scienter with respect to the 2013 Settlement Agreements. Defendants do not dispute that Shkreli "knew" of the 2013 Settlement Agreements. That is not the issue. The issue is whether the Company failed to disclose the 2013 Settlement Agreements in the 2012 Form 10-K because they intended to deceive investors. On that issue, the Plaintiff has failed to allege any facts or to offer any competing inference.

Therefore, Count One of the FACC should be dismissed insofar as it is based on the non-disclosure of the 2013 Settlement Agreements.[2]

## II. The Non-Disclosure of the Company's Stock Grant Non-Compliance Cannot Support the Plaintiff's Securities Fraud Claim

The Plaintiff's opposition brief also fails to establish that the FACC adequately pleaded loss causation, falsity, or scienter with respect to the non-disclosure of the Company's Stock Grant Non-Compliance.

---

[2] The Plaintiff does not offer any allegations specifically referring to the Director Defendants' scienter in failing to disclose the 2013 Settlement Agreements. Thus, Count One should be dismissed as to them as well.

### A. Loss Causation

Defendants' initial brief explained that "plaintiff must identify an event or corrective disclosure that caused the decline in the stock's value, and establish that the alleged omission concealed the circumstance that caused the value of the stock to decline when that circumstance was ultimately revealed." Defendants' Br. at 10. Defendants' initial brief also explained that the only disclosures alleged in the FACC which revealed the Stock Grant Non-Compliance were (i) the Bloomberg article published on October 2, 2014 and (ii) the Company's Form 8-K filed on December 15, 2014. Id. But neither disclosure caused a decline in the value of the Company's stock, and therefore, neither can establish loss causation. Id.

Defendants' initial brief also took the position that "[n]one of the other disclosures alleged in paragraphs 118 to 146 of the FACC are sufficient to establish loss causation," because "[e]ither they failed to reveal the substance of the Company's Stock Grant Non-compliance," or "they did not cause the value of the Company's stock to decline." Id. at 12. This argument was an express invitation to the Plaintiff to explain how any of the other disclosures alleged in the FACC both exposed the substance of the Company's Stock Grant Non-Compliance and caused the value of the Company's stock to decline.

Yet, in ten pages of argument addressed to loss causation, the Plaintiff devoted only one sentence to identifying a disclosure that purportedly revealed the substance of the Stock Grant Non-Compliance and caused the value of the Company's stock to decline. On page 47 of the opposition brief, the Plaintiff contends that "news reports in the days that followed (October 1st, 2nd, and 6th) revealed that the reasons for Shkreli's termination related, in part, to the fraud the Plaintiff alleges—grants of Retrophin Common Stock without shareholder approval, failures to disclose stock-related grants, stock-related grants exceeding Plan limits, illicit insider trading, fiduciary-duty violations, and other alleged securities violations." Plaintiff's Br. at 47. In

support of this contention about the news reports following Shkreli's departure, Plaintiff's opposition brief cites paragraphs 121, 132, and 134 of the FACC. But none of those paragraphs alleged a disclosure that both revealed the substance of the Stock Grant Non-Compliance and caused the value of the Company's stock to decline.

Paragraph 131 of the FACC described a Bloomberg article dated October 1, 2014. This article was not a corrective disclosure because it did not reveal anything about the Company's Stock Grant Non-Compliance. See In re Merrill Lynch Tyco Research Secs. Litig., 2004 U.S. Dist. LEXIS 2247, *8 (S.D.N.Y. Feb. 18, 2004). Moreover, it did not cause the value of the Company's stock to decline.

Paragraph 132 described another Bloomberg article dated October 2, 2014. This article did reveal the substance of the Company's Stock Grant Non-Compliance, but it did not cause the value of the Company's stock to decline. The Company's stock price rose the following day. Defendants' Br. at 11. Cf. Waters v. Gen. Elec. Co., 2010 U.S. Dist. LEXIS 107720, *26 (S.D.N.Y. Sept. 29, 2010), aff'd, 47 F. App'x 229 (2d Cir. 2011) ("The Court cannot find, and Plaintiffs have not cited, a single section 10b-5 case in which the plaintiff prevailed on a motion to dismiss when the stock price *increased* after an announcement revealing an alleged fraud.").

Paragraph 134 described a Seeking Alpha article dated October 6, 2014. This article could not have been a corrective disclosure because it did not reveal anything about the Stock Grant Non-Compliance.

Thus, neither the FACC nor the Plaintiff's opposition brief has identified any disclosure that both revealed the substance of the Stock Grant Non-Compliance and caused the value of the Company's stock price to decline. Nor could the Plaintiff identify any such disclosure, since the value of the Company's stock rose when the Company's Stock Grant Non-Compliance was disclosed on October 2, 2014 in the Bloomberg article. Therefore, Plaintiff has not—and will

never be able to—establish loss causation with respect to the alleged non-disclosure of the Company's Stock Grant Non-Compliance.

      **B.**      **Falsity**

Defendants' initial brief contended that the FACC failed to establish falsity with respect to the Stock Grant Non-Compliance because it did not identify any statements that were rendered false or misleading as a result of the non-disclosure of the Stock Grant Non-Compliance. See Defendants' Br. at 12-15. In particular, Defendants' initial brief reviewed each of the statements that the FACC alleged was rendered false and misleading by the Company's Stock Grant Non-Compliance and explained why none of them was false or misleading. Id. The Plaintiff's opposition brief does not address any of these arguments, effectively conceding that none of the statements identified in the FACC were rendered false or misleading by the non-disclosure of the Stock Grant Non-Compliance.

Instead, the opposition brief identifies a new statement that the Plaintiff contends was rendered false or misleading. This new statement cannot be found in any of the Company's public statements, and it was not alleged in the FACC. Rather, the Plaintiff contends that this statement was "implicit" in the Company's descriptions of its Incentive Compensation Plan in the 2014 Definitive Proxy Statement. Plaintiff's Br. at 20. Specifically, the Plaintiff contends that the Company's description of its Incentive Compensation Plan includes the "implicit" representation that the Company was following the Plan, and the Company's Stock Grant Non-Compliance rendered that "implicit" representation false. Id. But this so-called "implicit" representation cannot be found in the 2014 Definitive Proxy Statement or in any of the Company's other public filings, and it was not alleged in the FACC. Thus, it cannot support a claim for securities fraud.

### C. Scienter

Even if it were possible to plead securities fraud based on an "implicit" representation that was not alleged in the FACC, the Plaintiff's claim must be dismissed because the Plaintiff has failed to allege that the Company's failure to disclose its Stock Grant Non-Compliance was intended to deceive investors.

Defendants' initial brief contended that the only reasonable inference is that the non-disclosure of the Company's Stock Grant Non-Compliance was inadvertent. See Defendants' Br. at 16-17. Defendants supported this inference by explaining that the Company's period of non-compliance was brief (February to August 2014) and followed the Company's uplisting to NASDAQ, when it had to incorporate all of the new NASDAQ regulations at the same time, including Rule 5635(c). Id. Defendants' initial brief also supported the inference of inadvertence by highlighting the fact that the Company accurately reported the aggregate value and number of these grants in the Company's financial statements during the brief period of non-compliance. Id. The Plaintiff's argument that the Company intended to conceal these grants from its investors cannot be reconciled with the fact that the Company completely and accurately disclosed these grants in the financial statements.

The only allegations of scienter in the FACC addressing the Company's Stock Grant Non-Compliance are set forth in paragraphs 148 and 149. Those paragraphs alleged that Shkreli knew of the grants because he directed them, while the Director Defendants who were members of the Compensation Committee "had a duty to pay special attention" to the grants. ¶ 147. But as Defendants argued in their initial brief, the issue is not whether Shkreli or the Director Defendants knew of the grants themselves. Defendants' Br. at 16. The only issue is whether the FACC alleged that any Defendants knew that the grants violated Rule 5635(c)(4) and consciously disregarded the rule's requirements, and then intentionally concealed the Company's

non-compliance.  Id.  On this issue the FACC was silent—and nothing in the Plaintiff's opposition brief addresses this defect in the FACC.

Rather than defending the only two allegations included in the FACC relating to the Company's Stock Grant Non-Compliance, the Plaintiff's opposition brief offers a series of new allegations that were not included in the FACC.  Specifically, the Plaintiff's opposition brief contends that the Company's Stock Grant Non-Compliance was due to the fact that the grants did not qualify as "inducement awards," and that this fact should have been obvious to Shkreli and the Director Defendants who were members of the Compensation Committee.  Plaintiff's Br. at 34.  The Plaintiff contends that this fact should have been obvious because stock grants only qualify as inducement awards when they are made to new employees and consultants, and Defendants must have known that the grantees were current employees and consultants.  Id.

This new argument fails because the FACC did not allege any of the facts on which it is based.  In particular, the FACC failed to allege any facts that would enable the Court to determine why the stock grants were non-compliant and whether it had anything to do with the requirements for inducement awards.  In fact, when the Company disclosed its Stock Grant Non-Compliance on December 15, 2014, the Company reported that NASDAQ had determined that the grants "did not satisfy all of the criteria to qualify as Inducement Awards."  Declaration of Ian Shapiro in Support of Defendants' Motion to Dismiss the First Amended Consolidated Complaint ("Shapiro Decl."), Ex. E (emphasis added).  Thus, even if it were true that the Company's non-compliance related to the criteria for inducement awards, there is no basis for inferring that the grants were non-compliant because they were made to current employees and consultants, rather than prospective employees and consultants.

In short, in the absence of adequate allegations of scienter in paragraphs 148 and 149 of the FACC (the only paragraphs to address Defendants' scienter in relation to the stock grants),

the Plaintiff's opposition brief offers a theory about how the Stock Grant Non-Compliance relates to the grants' failure to qualify as inducement awards and how it should have been obvious that the grants did not so qualify. But all of that is speculation, and is not based on specific facts alleged in the FACC. The only allegations in the FACC are that Shkreli and the Director Defendants knew that the grants were being made. For all of the foregoing reasons, even if those allegations were true, they are irrelevant and do not establish Defendants' scienter with respect to the Company's Stock Grant Non-Compliance.

Therefore, Count One of the FACC should be dismissed against the Director Defendants and Retrophin to the extent it is based on the non-disclosure of the Company's Stock Grant Non-Compliance.

### III. The Non-Disclosure of Shkreli's Related-Party Transactions Cannot Support the Plaintiff's Securities Fraud Claim

The Plaintiff has also failed to adequately plead loss causation or scienter with respect to the non-disclosure of Shkreli's Related-Party Transactions.

#### A. Loss Causation

Defendants' initial brief argued that "[t]he FACC concedes that Shkreli's Related-Party Transactions were not revealed to the market until the February 20, 2015 Form 8-K, and this concession alone should be sufficient to find that the FACC fails to establish loss causation." Defendant's Br. at 18. The Plaintiff's opposition brief never addresses that argument, and it should be dispositive of whether the FACC adequately pleaded loss causation with respect to Shkreli's Related-Party Transactions. The value of the Company's stock price rose after the Related-Party Transactions were first revealed to the market on February 20, 2015, see Shapiro Decl., Ex. T, and therefore, neither the Form 8-K nor any other disclosure could be a corrective disclosure of that circumstance.

Furthermore, even if the Plaintiff had not admitted that the February 20 Form 8-K was the earliest disclosure of Shkreli's Related-Party Transactions, the FACC would still fail to establish loss causation because none of the disclosures alleged in paragraphs 118 to 146 of the FACC both revealed the substance of Shkreli's Related-Party Transactions and caused the value of the Company's stock to decline.  Defendants' initial brief addressed each disclosure in the FACC and explained in detail why it was not a corrective disclosure with respect to Shkreli's Related-Party Transactions.  See Defendants' Br. at 18-23.  This exercise was also an invitation to the Plaintiff to respond by explaining which disclosures, if any, both revealed the substance of Shkreli's Related-Party Transactions and caused the value of the Company's stock to decline.  Yet, Plaintiff's opposition brief seeks to defend only four of the alleged disclosures, and only in the most conclusory and unconvincing way.

Two of those four disclosures are addressed on page 44, where the Plaintiff seeks to defend the May 28, 2014 and October 6, 2014 Seeking Alpha articles as corrective disclosures of Shkreli's Related-Party Transactions.  In response to Defendants' argument that the allegedly corrective information in the May 28, 2014 Seeking Alpha article had already been disclosed in the Company's public filings, the Plaintiff argues that the article also contained additional information about the Related-Party Transactions:

> Whether the revelations in either the May 28, 2014 or October 6, 2014 Seeking Alpha articles were partially based on earlier public information does not disable Plaintiff from relying on either for loss causation.  <u>Both the May 28, 2015 and October 6, 2014 Seeking Alpha articles revealed additional information about the subject matter of the fraud that Plaintiff alleges here can be relied on as partial truth revelations</u>.

Plaintiff's Brief at 44 (emphasis added).  But that contention is demonstrably false.  In the case of the May 28, 2014 Seeking Alpha article, the excerpts the FACC cited expressly refer to information that the Company had already disclosed in its 2012 Form 10-K/A and 2013 Form 10-K.  This information had already been absorbed by the market when disclosed in the

Company's financial statements, and thus could not have caused the decline in the value of the Company's stock following publication of the article. See Omnicom Group, Inc. Secs. Litig., 597 F.3d 501, 512 (2d Cir. 2010).[3]

The Plaintiff's opposition brief also seeks to defend the October 6, 2014 Seeking Alpha article on the ground that it "revealed additional information about the subject matter of [Shkreli's Related-Party Transactions]." Plaintiff's Br. at 44. But as Defendants explained in their initial brief, that article does not reveal anything about the Related-Party Transactions, and Plaintiff's opposition brief has not identified any information in the article that revealed anything about those transactions. Therefore, the October 6, 2014 Seeking Alpha article cannot be a corrective disclosure of Shkreli's Related-Party Transactions. See Defendants' Br. at 22-23.

Subsequently, on page 47, the Plaintiff seeks to defend the Company's disclosure of the resignation of Panoff and Paley on September 16, 2014 and the replacement of Shkreli as CEO on September 30, 2014 as corrective disclosures. The Plaintiff's opposition brief says the following about the disclosure of these departures:

> Shkreli's termination, and the other officer/director departures, represented materialization of the risks that had been previously undisclosed. By all accounts, Shkreli's departure was directly tied to his previously undisclosed improper conduct. Thus, these disclosures fell within the "zone of risk" concealed by Defendants' omission of [the stock option grants] and related party deals . . . .

Plaintiff's Br. at 47-48. There is a reason the Plaintiff's argument on these two alleged disclosures is so vague and non-specific. The Plaintiff cannot tie either of these disclosures to Shkreli's Related-Party Transactions. There is nothing in the Company's disclosures, or in the news reports following the disclosures, that reveals anything about those transactions.

The Plaintiff contends that unidentified "accounts" of Shkreli's departure tie his departure to the Related-Party Transactions. But the Plaintiff has not identified any such

---

[3] The Seeking Alpha article even cites the specific pages of the 2012 Form 10-K/A and the 2013 Form 10-K where this information had already been disclosed. See Shapiro Decl., Exs. B, C, Q.

"accounts," no such accounts exist, and the FACC allege that the Company even knew of Shkreli's Related-Party Transactions in September 2014 when it decided to replace him as CEO.

Recognizing that the disclosure of these departures did not reveal anything about Shkreli's Related-Party Transactions, the Plaintiff also contends that the departures represented the materialization of a risk that was concealed by the non-disclosure of Shkreli's Related-Party Transactions. But the FACC never identified any risk or how such risk was concealed by the non-disclosure of the Related-Party Transactions, nor does it say anything about how the departures of Panoff, Paley, and Shkreli represented the manifestation of that risk. In fact, the FACC did not make any allegation that any of these circumstances represented the materialization of any risk. In the absence of any such allegations in the FACC, the Plaintiff cannot establish loss causation on that basis.[4]

### B. Scienter

The Plaintiff has also failed to show that the Company or any of the Director Defendants intended to deceive investors with respect to Shkreli's Related-Party Transactions.[5] Defendants' initial brief explained that "[t]he only allegations of scienter in the FACC relating to Shkreli's Related-Party Transactions relate to Shkreli individually." Defendants' Br. at 23. The initial

---

[4] The Plaintiff advances a three sentence, conclusory risk materialization theory of loss causation for the first time in its opposition brief. Plaintiff's Br. at 47-48. But the opposition brief also fails to identify any risk, describe how any such risk was concealed by the non-disclosure of the Related-Party Transactions, or explain how the departures of Paley, Panoff, and Shkreli represented the materialization of that risk. Furthermore, the opposition brief's conclusory theory is based on the same unidentified accounts that supposedly tied Shkreli's departure to the Related-Party Transactions. Therefore, the opposition brief's risk materialization theory is wholly inadequate to support loss causation.

[5] As Defendants explained in their initial brief, "[t]he FACC does not include a single allegation that any of the Director Defendants consciously failed to disclose Shkreli's Related-Party Transactions," nor does the FACC allege that the Director Defendants had any motive or acted recklessly in failing to disclose these transactions. Defendants' Br. at 23. The Plaintiff's response—that the Director Defendants were put on notice by certain "red flags"—is unavailing because the Plaintiff does not explain how any of these alleged "red flags" related to the Related-Party Transactions.

-13-

brief further explained that "[w]hile the Company does not concede that these allegations are sufficient to establish Shkreli's scienter, in either case, his scienter should not be imputed to the Company" because he was an adverse agent. Id. at 23-24.

The Plaintiff's opposition brief asserts that the adverse interest exception to imputation does not apply here because "Retrophin derived some benefit from the stock grants." Plaintiff's Br. at 40. But Defendants' initial brief contended that Shkreli was an adverse agent only with respect to the Related-Party Transactions, not with respect to the Company's Stock Grant Non-Compliance. By failing to identify any benefit conveyed to the Company through Shkreli's Related-Party Transactions, the Plaintiff effectively concedes that Shkreli was acting as an adverse agent in that context.

The Plaintiff also argues that the adverse interest exception "does not apply in the securities context when innocent third parties are involved." Id. at 38. But that is not supported by the cases cited by Plaintiff. Those cases all involve instances in which the agent acted with apparent authority—i.e., "while he was working for [the company], and for the apparent benefit to [the company]"—and they stand for the proposition that where an agent is, or merely appears to be, acting for his principal's benefit in defrauding an innocent third party, the adverse interest exception does not always bar imputation. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 497 (3d Cir. 2013) (emphasis added). See also id. ("There is a genuine issue of material fact as to whether [the agent's] fraudulent statements were made as part of his employment with, and for the benefit of [the company], so that those statements might be imputed to [the company]." (emphasis added)); In re Tyco Int'l, Ltd. Multidistrict Litig., 2004 U.S. Dist. LEXIS 20733, *18 (D.N.H. 2004) (adverse interest exception did not apply on motion to dismiss because plaintiff's complaint could "fairly be read to charge that the [agent's] looting was part of a larger scheme" to benefit the company and inflate its stock).

In contrast, where there is no allegation that the agent acted or appeared to act for the benefit of his principal, the adverse interest exception clearly applies, including in the securities fraud context.  See, e.g., In re JPMorgan Chase & Co. Secs. Litig., 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) (dismissing Section 10(b) claim and applying adverse interest exception where allegedly adverse agent made a material misstatement to a third party); Alpern v. Utilicorp United, Inc., 1994 U.S. Dist. LEXIS 17529, *12 (W.D. Mo. Nov. 14, 1994) (same).  Neither the FACC nor the Plaintiff's opposition brief contains any allegation that Shkreli was acting for the Company's benefit with respect to the Related-Party Transactions, and to the contrary, the FACC specifically alleges that the Related-Party Transactions were "designed to personally benefit Shkreli." See ¶ 5.  Accordingly, it would be inappropriate to impute his scienter to the Company (or to any of the Director Defendants).

For the foregoing reasons, Count One should be dismissed as to the Director Defendants and Retrophin with respect to the non-disclosure of Shkreli's Related-Party Transactions.

## IV.   The Plaintiff Cannot Make Out a Claim under Section 20(a)

As set forth above, the Plaintiff has not plead that either the Company or the Director Defendants committed a primary securities violation under Section 10(b) or Rule 10b-5. Accordingly, the Plaintiff cannot make out a claim that the Director Defendants are liable for the Company's alleged omissions as controlling persons under Section 20(a) of the Exchange Act, and Count Two of the FACC should also be dismissed.  See ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007) (affirming dismissal of controlling person claim where the plaintiff failed to adequately allege a primary violation).

## CONCLUSION

For the foregoing reasons, the FACC should be dismissed as to Retrophin and the Director Defendants.

| | |
|---|---|
| New York, NY<br>Dated: October 28, 2015 | Respectfully submitted,<br><br>COOLEY LLP<br>1114 Avenue of the Americas<br>New York, NY 10036<br>(212) 479-6900<br><br>By: */s/ Ian Shapiro*<br>         Ian Shapiro (IRS-5120) |