UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE RETROPHIN, INC. SECURITIES LITIGATION | Case No. 1:14-cv-08376-PKC<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT MARTIN SHKRELI'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED COMPLAINT**

Elissa J. Preheim
Scott B. Schreiber
Daniel M. Friedman
ARNOLD & PORTER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
202.942.5000
Elissa.Preheim@aporter.com
Scott.Schreiber@aporter.com
Daniel.Friedman@aporter.com

Mark R. Sylvester
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
212.715.1000
Mark.Sylvester@aporter.com

*Attorneys for Defendant Martin Shkreli*

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I. PLAINTIFFS HAVE FAILED TO PLEAD LOSS CAUSATION .................................. 1

    A. Retrophin's Stock Price Rose Following the Disclosures that Plaintiffs Allege Revealed the Truth ............................................................................................. 1

    B. Unrelated Alleged Disclosures Provide No Basis for Loss Causation .................. 3

II. PLAINTIFFS' OPPOSITION REINFORCES THE FAILURE TO PLEAD SCIENTER AS TO MR. SHKRELI .................................................................................. 5

    A. Plaintiffs Fail To Plead Scienter Regarding The 2013 Settlement Agreements ..... 5

    B. Plaintiffs Fail To Plead Scienter In Connection With Stock Grant Noncompliance ........................................................................................................ 6

    C. Plaintiffs Fail To Plead Scienter As to the Alleged Related Party Transactions .... 7

    D. Plaintiffs Fail To Plead Scienter In Connection With Mr. Shkreli's Stock Sale .... 8

III. PLAINTIFFS FAIL TO PLEAD MATERIALITY OF CERTAIN OMISSIONS ........... 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Berry v. Valence Tech., Inc.*,
    951 F. Supp. 2d 457 (9th Cir. 1999) ..........................................................................................6

*Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008)........................................................................................8

*City of Brockton Ret. Sys. v. Shaw Grp. Inc.*,
    540 F. Supp. 2d 464 (S.D.N.Y. 2008)........................................................................................6

*Freudenberg v. E*TRADE Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)........................................................................................9

*Harris v. Amtrust Fin. Servs.*,
    No. 14-736, 2015 WL 5707235 (S.D.N.Y. Sept. 29, 2015) .......................................................6

*Henning v. Orient Paper, Inc.*,
    No. 10-5887, 2011 WL 2909322 (C.D. Cal. July 20, 2011).......................................................7

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    No. 11-2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012).............................................2, 3, 7

*In re Bradley Pharms., Inc. Sec. Litig.*,
    421 F. Supp. 2d 822 (D.N.J. 2006) ............................................................................................2

*In re China Valves Tech. Sec. Litig.*,
    No. 11-0796, 2012 WL 4039852 (S.D.N.Y. Sept. 12, 2012) ...................................................10

*In re Francesca's Holding Corp. Sec. Litig.*,
    No. 13-6882, 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015).............................................5, 10

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) .......................................................................................8

*In re Geopharma, Inc. Sec. Litig.*,
    399 F. Supp. 2d 422 (S.D.N.Y. 2005)....................................................................................2, 3

*In re Manulife Fin. Corp. Sec. Litig.*,
    276 F.R.D. 87 (S.D.N.Y. 2011) .................................................................................................2

*In re Sipex Corp. Sec. Litig.*,
    No. 05-392, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .......................................................7

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008).................................................................................2

*In re Winstar Commc'ns*,
   No. 01-11522, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006).................................................4

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005)...............................................................................................4, 5

*Lipow v. Net1 UEPS Techs., Inc.*,
   No. 13-9100, 2015 WL 5459730 (S.D.NY. Sept. 16, 2015) .............................................7

*Police & Fire Ret. Sys. Of City of Detroit v. SafeNet, Inc.*,
   645 F. Supp. 2d 210 (S.D.N.Y. 2009)................................................................................3, 4

*Public Employees' Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) .............................................................................................4, 5

*S.E.C. v. China Ne. Petroleum Holdings Ltd.*,
   27 F. Supp. 3d 379 (S.D.N.Y. 2014)...................................................................................10

*Salvani v. ADVFN PLC*,
   50 F. Supp. 3d 459 (S.D.N.Y. 2014).....................................................................................5

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976)............................................................................................................10

*Van Dongen v. CNinsure Inc.*,
   951 F. Supp. 2d 457 (S.D.N.Y. 2013)................................................................................6, 9

*Waters v. General Elec. Co.*,
   No. 08-8484, 2010 WL 3910303 (S.D.N.Y. Sept. 29, 2010) ..............................................1

# INTRODUCTION

Plaintiffs' Opposition further confirms that Plaintiffs have failed to state a claim against Defendant Shkreli.[1]  Plaintiffs do not (and cannot) dispute that the Company's share price *increased* after the alleged corrective disclosures, and their Opposition wholly fails to demonstrate that any of the other, unrelated disclosures alleged in the Complaint revealed the substance of the alleged fraud.  Plaintiffs' inability to refute the absence of loss causation compels dismissal.  In addition, Plaintiffs' Opposition reinforces the Complaint's failure to plead facts supporting the requisite strong inference that Mr. Shkreli acted with scienter, as well as the failure to plead material misstatements or omissions in connection with certain claims.  Unable to cure these pleading deficiencies, Plaintiffs' Opposition resorts to addressing "straw men" arguments and taking positions contradicted by allegations in the Complaint.  Plaintiffs' Complaint should be dismissed with prejudice.

# ARGUMENT

## I. PLAINTIFFS HAVE FAILED TO PLEAD LOSS CAUSATION

### A. <u>Retrophin's Stock Price Rose Following the Disclosures that Plaintiffs Allege Revealed the Truth</u>

Plaintiffs' Opposition does not dispute the central problem with their loss causation argument:  Retrophin's share price *rose* following each disclosure that Plaintiffs allege revealed the "truth" of the alleged fraudulent omissions.  *See Waters v. Gen. Elec. Co.*, No. 08-8484, 2010 WL 3910303, at *8 (S.D.N.Y. Sept. 29, 2010).

*2013 Settlement Agreements.*  Plaintiffs do not contest that Retrophin's share price rebounded immediately after the 2013 Settlement Agreements were disclosed in Retrophin's September 16, 2013 Form 10-K/A.  *See* Br. at 6-7; FACC ¶¶ 91-92, 119.  Although the Form 10-

---

[1] This memorandum uses the defined terms as set forth in Mr. Shkreli's opening Memorandum of Law ("Br.").

K/A was followed by a small share price decline, three days later, Retrophin's share price closed higher than the share price before the Form 10-K/A was filed.  "Plaintiffs' failure to address or explain this rebound renders their loss causation allegation implausible."  *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011).

<u>*Stock Grant Noncompliance.*</u>  Similarly, Plaintiffs do not and cannot dispute that Retrophin's share price rose following the disclosures that Plaintiffs allege revealed the stock grant noncompliance: the October 2, 2014 Bloomberg article, the December 15, 2014 Form 8-K, and the January 23, 2015 Definitive Proxy Statement.  Br. at 5-6.  These increases plainly demonstrate that Plaintiffs cannot adequately plead loss causation with respect to the stock grants, and Plaintiffs offer no argument to the contrary.

<u>*Alleged Related Party Transactions.*</u>  Plaintiffs concede that Retrophin's share price rose following the issuance of the February 20, 2015 Form 8-K ("Form 8-K"), which Plaintiffs contend revealed the alleged related party transactions, and which indeed is the source for all of Plaintiffs' factual allegations regarding those transactions.  *See* FACC ¶¶ 51-52, 141-42; *see* Opp. at 18, 23-24, 49.  Plaintiffs try to avoid the clear import of this share price increase—that the disclosure of the related party transactions did not cause investor losses—by arguing that the Form 8-K "confirmed" the material risk that investors had "anticipated" from earlier disclosures.  Opp. at 49.  But Plaintiffs do not (and cannot) identify how any of these unspecified, "earlier disclosures" revealed the substance of the alleged related party transactions.  Plaintiffs' reliance on *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11-2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012), *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006), *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008), *In re Geopharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 422 (S.D.N.Y. 2005), and *Police & Fire Ret. Sys. of the City of*

*Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210 (S.D.N.Y. 2009), is therefore misplaced, as those cases involved disclosures revealing the substance of the alleged fraud and were followed by share price declines.  *See, e.g.*, *Advanced Battery*, 2012 WL 3758085, at *12-13.

      B.      <u>Unrelated Alleged Disclosures Provide No Basis for Loss Causation</u>

Unable to dispute these share price increases, Plaintiffs attempt to manufacture loss causation by cherrypicking unrelated purported "partial disclosures" that were followed by price drops.  As set forth in Defendants' opening briefs, none of these purported "disclosures" actually revealed the substance of the alleged stock grant noncompliance or related party transactions.  *See* Br. at 7-10; Retrophin Br. at 12, 18-23.  Plaintiffs' Opposition fails to respond with anything other than conclusory assertions and instead resorts to addressing arguments that Defendant Shkreli never made.[2]  Indeed, Plaintiffs spend two pages of their Opposition quoting these purported disclosures, yet do not—because they cannot—quote any language that actually relates to the alleged stock grant noncompliance or related party transactions.[3]  Opp. at 7-8.

First, Plaintiffs point to articles posted on the *Seeking Alpha* web site.  Effectively conceding that the September 26 article was entirely unrelated to the alleged fraud, Plaintiffs assert that the May 28 and October 6 articles "revealed additional information about the subject matter of the fraud."  Opp. at 44.  Plaintiffs make no attempt to identify what "additional

---

[2] For example, Mr. Shkreli never suggested that loss causation requires a "single, unitary disclosure."  *See* Opp. at 41 (citation omitted).  Nor did he argue that loss causation requires that "a corrective disclosure be a 'mirror image' tantamount to a confession of fraud," *id.* at 41 (citation omitted); that news articles and internet posts are per se insufficient to support loss causation, *see id.* at 42; that Plaintiffs cannot plead loss causation by relying on disclosures that report information both related and unrelated to the alleged fraud, *see id.* at 43; or that Defendants have a "truth-on-the-market defense," *id.* at 45.

[3] The only quotation related to the stock grant noncompliance is from the October 2, 2014 *Bloomberg* article which, as discussed above, was followed by a share price increase.

3

information" was revealed, because they cannot; both articles simply paraphrased information previously disclosed to the market, and expressly cited those earlier disclosures. Br. at 9.[4]

Plaintiffs also argue that Retrophin's announcements of the termination of its auditor, the resignations of CFO Panoff and Director Paley, and the departure of Mr. Shkreli are purported corrective disclosures. But again, Plaintiffs do not (and cannot) identify in these announcements any substance of the alleged fraud. Br. at 7-8. They therefore cannot be corrective disclosures for loss causation purposes. *See, e.g.*, *SafeNet*, 645 F. Supp. 2d at 229 ("[T]he announcement of the departure of an officer, without explanation, would not alert investors to any improprieties so as to allege loss causation.").[5] Plaintiffs' contention that these unrelated disclosures nevertheless collectively constitute a corrective disclosure fails. Opp. at 48. The single case on which they rely, *Amedisys*, is plainly distinguishable. There, the alleged fraud involved providing medically unnecessary treatment visits in order to meet lucrative Medicare reimbursement thresholds, and the plaintiffs alleged partial disclosures that revealed information regarding the suspected Medicare fraud. *Public Employees' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 317-19, 323-25 (5th Cir. 2014). Here, by contrast none of the departure announcements or other alleged partial "corrective" disclosures revealed *any* substance of the alleged fraud. *See Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 175 & n.4 (2d Cir. 2005) (a corrective disclosure must "reveal to the market the falsity" of the prior statements).

---

[4] Plaintiffs' reliance on *In re Winstar Commc'ns*, Nos. 01-3014, 01-11522, 2006 WL 473885, at *15 (S.D.N.Y. Feb. 27, 2006), is misplaced. In *Winstar*, the court held that plaintiffs had adequately pled loss causation based on a share price decline following a report that analyzed complex financial data to conclude that the company had insufficient cash flow, a conclusion that would not necessarily have been reached by a "reasonable investor." *Id.* By contrast, the *Seeking Alpha* articles simply paraphrased statements from earlier filings and news articles.

[5] Plaintiffs' attempt to distinguish *SafeNet* by noting that subsequent news reports attributed Mr. Shkreli's departure "to the previously undisclosed stock trading irregularities," Opp. at 48, is self-defeating, because Retrophin's share price rose after the referenced October 2, 2014 *Bloomberg* article.

For the same reason, Plaintiffs' assertion that the disclosures of these officer/director departures were corrective disclosures because they somehow "represented materialization of the risks that had been previously undisclosed," Opp. at 47-48, cannot support loss causation. Plaintiffs fail, as they must, to identify the undisclosed risk they alleged materialized, or how the various officer/director departures were a materialization of that (unidentified) risk. *Lentell*, 396 F.3d at 173-742; *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 475 (S.D.N.Y. 2014) ("[T]he materialization of risk theory . . . requires a direct connection between the risk that is hidden from investors and the subsequent loss suffered by those investors."); *In re Francesca's Holding Corp. Sec. Litig.*, No. 13-6882, 2015 WL 1600464, at *21 (S.D.N.Y. Mar. 31, 2015) (holding that plaintiffs failed "to allege either that any risk was concealed or that a foreseeable materialization of that risk led to Plaintiffs' losses").

## II.   PLAINTIFFS' OPPOSITION REINFORCES THE FAILURE TO PLEAD SCIENTER AS TO MR. SHKRELI

### A.   Plaintiffs Fail To Plead Scienter Regarding The 2013 Settlement Agreements

Plaintiffs do not dispute that the 2013 Settlement Agreements were disclosed by Retrophin as events that occurred subsequent to the close of 2012 in a 2012 Form 10-K/A shortly after the agreements were executed. *See* Opp. at 25. Plaintiffs' Opposition does not identify any concrete, personal benefit to Mr. Shkreli stemming from any purported delay in disclosure, nor any facts suggesting any conscious misbehavior or recklessness by him in connection with any delay. The Complaint does not allege that Mr. Shkreli knew these 2013 agreements should have been disclosed in the 2012 Form 10-K. To the contrary, the compelling inference from the allegations is a mistaken application of GAAP, in which Retrophin initially did not believe the agreements, which post-dated year end 2012, warranted a subsequent events disclosure and ultimately determined otherwise. *See* Br. at 18; Retrophin Br. at 8-9. Such alleged GAAP

5

violations alone do not state a securities fraud claim, and the Complaint offers no competing inference. *See Harris v. Amtrust Fin. Servs.*, No. 14-736, 2015 WL 5707235, at *13 (S.D.N.Y. Sept. 29, 2015) ("Financial statements are complicated documents and reasonable minds can differ on the appropriate level of disclosure; … correcting errors simply does not suggest that the initial disclosures were made with fraudulent intent.") (dismissing complaint); Br. at 18.

### B.  Plaintiffs Fail To Plead Scienter In Connection With Stock Grant Noncompliance

Plaintiffs concede that Mr. Shkreli was not a member of the Compensation Committee, Opp. at 25—the Committee which they allege had "sole authority" to make stock awards and had "unique familiarity" with the stock grants. Opp. at 32; *see* FACC ¶¶ 36, 148. Plaintiffs' unsupported allegation that Mr. Shkreli "personally directed and orchestrated" the Company's noncompliant stock grants, FACC ¶ 149, therefore is not only conclusory but also contradicted by the Complaint's own allegations.[6] In addition, Plaintiffs' assertions, without any supporting facts, that Mr. Shkreli was a "hands-on" manager, Opp. at 24; FACC ¶ 149, who therefore must have known the grantees' employment status and the grants' noncompliance, Opp. at 25, are precisely the type of allegations repeatedly rejected by courts as insufficient to plead scienter. *See City of Brockton Ret. Sys. v. Shaw Grp. Inc.*, 540 F. Supp. 2d 464, 472-74 (S.D.N.Y. 2008) (dismissing for failure to plead scienter complaint alleging that "defendants were 'hands on' executives who, as a result of their positions and management styles" must have been aware of misstatements); *Lipow v. Net1 UEPS Techs., Inc.*, No. 13-9100, 2015 WL 5459730, at *14

---

[6] Plaintiffs allege that Retrophin disclosed the stock grant awards as "inducement awards" *after* Mr. Shkreli's departure. FACC ¶ 133; Opp. at 34. To the extent Plaintiffs base any claims against Mr. Shkreli on this alleged disclosure, Opp. at 34, they fail to plead his scienter or otherwise state a claim as to Mr. Shkreli because Retrophin's statement postdates his departure. *See Berry v. Valence Tech., Inc.*, 175 F.3d 699, 706-07 (9th Cir. 1999) (affirming dismissal of claims against former CEO where alleged misstatements were made after his departure). Further, Plaintiffs' reliance on *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457 (S.D.N.Y. 2013), is misplaced. In *Van Dongen*, the plaintiffs alleged that executives made "repeated omissions and outright denials" when asked whether a company's employees received equity compensation, contrary to the actual compensation plan in place. *Id.* at 472. Plaintiffs have made no such allegations here as to Mr. Shkreli.

(S.D.NY. Sept. 16, 2015) (plaintiffs "must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions").

      C.      <u>Plaintiffs Fail To Plead Scienter As to the Alleged Related Party Transactions</u>

Plaintiffs seek to bolster the claims of scienter regarding Mr. Shkreli's involvement with the alleged related party transactions by relying on the Form 8-K, FACC ¶ 51; Opp. at 23-24 & n.4, but the Form 8-K's statements, made by an interested party after Mr. Shkreli left the Company, are not sufficiently particularized to plead scienter. *See* Br. at 19-21.  Plaintiffs' cited authority is not applicable here and is distinguishable because in those cases the plaintiffs pled misconduct that was both substantively different and far more particularized than that described in the Form 8-K.  *See* Opp. at 24; *Advanced Battery*, 2012 WL 3758085 (alleging company itself was a fraudulent enterprise designed to enrich individual officers by funds raised by falsifying earnings figures); *Henning v. Orient Paper, Inc.*, No. 10-5887, 2011 WL 2909322 (C.D. Cal. July 20, 2011) (alleging CEO owned a 70% interest in his company's main supplier, which received $90 million in payments from the company); *In re Sipex Corp. Sec. Litig.*, No. 05-392, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) (alleged transaction "described in painful detail in the complaint").  In contrast, while the Form 8-K asserts that the purportedly "predominant purpose" of the referenced transactions was to settle and release claims against Mr. Shkreli or his hedge fund, neither the Form 8-K nor the Complaint provides any facts to support this conclusion.  Further, the Form 8-K suggests that at least certain transactions were approved by the Company's Board.  *See* Br. at 19-22.[7]

---

[7] Plaintiffs' argument that Board approval is a fact issue, Opp. at 25, misses the mark.  Plaintiffs seek to incorporate the Form 8-K into their allegations, Opp. at 24 n.4, the Form 8-K indicates that certain transactions were approved

Footnote continued on next page

Notwithstanding Plaintiffs' assertion to the contrary, Retrophin's receipt of a criminal investigation subpoena "regarding, among other things, the Company's relationship with the MSMB Entities and Mr. Shkreli," FACC ¶ 144, provides no basis for pleading scienter as to Mr. Shkreli, especially given that Plaintiffs plead <u>no</u> facts connecting the subpoena with their claims of nondisclosure.  Moreover, the very cases that Plaintiffs cite undermine their argument.  In *In re Gentiva Securities Litigation*, the court found scienter was not sufficiently pled and granted a motion to dismiss despite the existence of related, ongoing investigations by the Senate Finance Committee and the Securities and Exchange Commission.  932 F. Supp. 2d 352, 362-63, 380-83 (E.D.N.Y. 2013); *see also Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148 (S.D.N.Y. 2008) (finding a guilty plea, not an investigation, was evidence of scienter).

        D.      <u>Plaintiffs Fail To Plead Scienter In Connection With Mr. Shkreli's Stock Sale</u>

No facts are alleged to show that Mr. Shkreli's stock sales were suspiciously timed to take advantage of prices inflated by any of the claimed misrepresentations or omissions, as they must to plead scienter premised on insider stock sales.  *See* Br. at 22-24.  Plaintiffs' Opposition simply regurgitates their insufficient allegations, Opp. at 26, failing to address the missing link between the alleged sales and purported misstatements and omissions at issue here.  *See* Br. at 23-24.  For example, Plaintiffs fail to articulate any link between their claims of nondisclosure and the "suspicious messages" purportedly posted on the Internet prior to Mr. Shkreli's single in-class-period sale.  Opp. at 26; FACC ¶ 54.  Plaintiffs also continue to assert that this sale occurred after Retrophin released "uber-bullish 'non-non-non GAAP guidance,'" *id.*, but of course a trade after the public release of information is no basis for inferring scienter.

---

Footnote continued from previous page
by the Board, and this Court must weigh competing inferences to be drawn when assessing Plaintiffs' allegations that Mr. Shkreli acted with scienter.  *See* Br. at 21.

8

Mr. Shkreli's alleged *post*-class period sales also provide no basis for pleading scienter, and because the timing of such sales, all of which were made *after* Mr. Shkreli left Retrophin, is not logically linked to any alleged misrepresentations at issue here, Plaintiffs' cited authority is inapposite. *See Van Dongen*, 951 F. Supp. 2d at 475 ("defendants sold their own shares *while at the same time misrepresenting* corporate performance in order to inflate stock prices" (emphasis added)); *Freudenberg v. E*TRADE Fin. Corp.*, 712 F. Supp. 2d 171, 200 (S.D.N.Y. 2010) (involving allegedly periodic in-class-period stock sales).

Moreover, Plaintiffs' contention that the timing of such sales was suspicious is both conclusory and nonsensical. Plaintiffs argue that the alleged sales preceded Retrophin's December 15, 2014 press release announcing NASDAQ's determination of noncompliance. Opp. at 27. But the press release states that NASDAQ's determination letter was dated December 9, long after Mr. Shkreli's departure from Retrophin and his alleged post-class-period stock sales. FACC ¶ 42. In any event, these sales are consistent with the inference of liquidating his holdings after leaving Retrophin, a more plausible competing inference about his motivation to make such sales. *See* Br. at 23.

Plaintiffs' allegations that all Defendants were motivated to keep the stock price inflated based on a desire to execute specific transactions, *see* Opp. at 35, also fail. Plaintiffs contend that they may plead scienter by alleging inflation of stock prices was "a means to effectuate a specific acquisition that would not otherwise be possible," Opp. at 35 (citation omitted), but they plead no facts suggesting that any specific transaction would not have been possible below a certain stock price. The general desire to keep share price high is a motive shared by all corporate executives and is insufficient to plead scienter. *See* Br. at 24.

9

### III.   PLAINTIFFS FAIL TO PLEAD CERTAIN MATERIAL MISREPRESENTATIONS OR OMISSIONS

Plaintiffs' Opposition supports their failure to plead materiality as to several alleged misstatements and omissions.  For example, Plaintiffs fail to allege that Defendants' purported failure to disclose the stock grant noncompliance would have significantly altered the "'total mix' of information" available to investors.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  Plaintiffs respond in only conclusory fashion that a reasonable investor would have considered that information material.[8]  Opp. at 21-22.  They fail to address the fact that Retrophin's shareholders promptly ratified the stock grants, FACC ¶ 139, thereby demonstrating that Retrophin's shareholders did *not* consider the stock grants material.  Br. at 12.  Plaintiffs' Opposition also fails to identify any statements that were rendered misleading as a result of the alleged nondisclosure of the stock grant noncompliance.  Br. at 11-12; Retrophin Br. at 12-15.

Plaintiffs also contend that the related party transactions were material because disclosure was required under Item 404, Opp. at 17, but multiple courts have concluded that is insufficient to establish materiality.  *See In re China Valves Tech. Sec. Litig.*, No. 11-0796, 2012 WL 4039852, at *6-7 (S.D.N.Y. Sept. 12, 2012); *In re Francesca's*, 2015 WL 1600464, at *15-16.[9]

### CONCLUSION

For the foregoing reasons, and those set forth in his opening brief, Plaintiffs' Complaint should be dismissed as to Mr. Shkreli.

---

[8] Plaintiffs argue in passing that the materiality of the stock grant noncompliance is "demonstrated by the approximate 15% stock-price decline that followed news reports tying Shkreli's resignation to the improper stock grants," Opp. at 22, a reference to Retrophin's share price decline following the October 6, 2014 *Seeking Alpha* article.  FACC ¶¶ 134-35.  But that article simply reported previously disclosed information, Br. at 9-10, and Retrophin's share price actually *increased* following the prior, October 2, 2014 *Bloomberg* article reporting that Mr. Shkreli's resignation was related to allegedly improper stock grants.  *See* Br. 5-6.

[9] *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, on which Plaintiffs rely, held only that materiality under Rule 10b–5 is sufficient to establish that disclosure is required under Item 404 and FAS 57, not the converse.  27 F. Supp. 3d 379, 393-94 (S.D.N.Y. 2014).

Dated: October 28, 2015
New York, New York

        ARNOLD & PORTER LLP

By: /s/ Elissa J. Preheim
    Elissa J. Preheim
    Scott B. Schreiber
    Daniel M. Friedman
    601 Massachusetts Ave., NW
    Washington, DC 20001
    202.942.5000
    Elissa.Preheim@aporter.com
    Scott.Schreiber@aporter.com
    Daniel.Friedman@aporter.com

    Mark R. Sylvester
    399 Park Avenue
    New York, NY 10022-4690
    212.715.1000
    Mark.Sylvester@aporter.com
    *Attorneys for Defendant Martin Shkreli*