UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                                            :
In re RETROPHIN, INC. Securities Litigation : Case No. 14-cv-08376 (PKC)
                                            :
------------------------------------------- :
                                            :
                                            :  CLASS ACTION
THIS DOCUMENT RELATES TO:                   :
                                            :
ALL ACTIONS                                 :
                                            :
------------------------------------------- X


# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANT MARC PANOFF'S MOTION TO DISMISS


Andrew T. Solomon
Paul E. Summit
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, NY  10019
(T) 212-660-3000
(F) 212-660-3001
asolomon@sandw.com
psummit@sandw.com

*Attorneys for defendant Marc Panoff*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ...........................................................................................1

II. REPLY ARGUMENT .........................................................................................................1

    A. Plaintiff Has Not Alleged That Panoff Had A Personal Motive To Defraud Retrophin's Investors ................................................................................................1

    B. Plaintiff Has Also Failed To Allege Strong Circumstantial Evidence of Conscious Misbehavior............................................................................................4

III. CONCLUSION....................................................................................................................7

## **TABLE OF AUTHORITIES**

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996)......................................................................................... 2

*City of Brockton Retirement Sys. v. Shaw Group*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008).......................................................................5-6

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)..................................................................................................... 3

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgt.*,
  376 F. Supp. 2d 385 (S.D.N.Y. 2005)......................................................................... 4

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)......................................................................... 4

*Goplen v. 51job, Inc.*,
  453 F. Supp. 2d 759 (S.D.N.Y. 2006)......................................................................... 4

*In re Aegon N.V. Sec. Litig.*,
  No. 03 Civ. 603 (RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004) ..................... 6

*In re Labranche Secs. Litig.*,
  405 F. Supp.2d 333 (S.D.N.Y. 2005).......................................................................... 2

*In re Magnum Hunter Resources Corp. Secs. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014)........................................................................... 5

*In re Silvercorp Metals*,
  26 F. Supp. 3d 266 (S.D.N.Y. 2014)........................................................................... 2

*In re Sotheby's Holdings, Inc.*,
  No. 00 Civ. 1041 (DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000).................... 6

*In re Twinlab Corp. Sec. Litig.*,
  103 F. Supp. 2d 193 (E.D.N.Y. 2000) ........................................................................ 2

*In re Van Der Moolen Holding N.V. Secs. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005)......................................................................... 2

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)......................................................................................... 2

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)......................................................................................... 1

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009)......................................................................... 3

*Profit Sharing Plan v. Philip Morris Co.*,
  75 F.3d 801 (2d Cir. 1996) .................................................................................................. 2

*Saltz v. First Frontier, LP*,
  782 F. Supp. 2d 61 (S.D.N.Y. 2010) ................................................................................... 4

*San Leandro Emergency Med. Group. Profit Sharing Plan v. Philip Morris Co.*,
  75 F.3d 801 (2d Cir. 1996) .................................................................................................. 2

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) ................................................................................... 4

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*,
  531 F.3d 190 (2d Cir. 2008) ................................................................................................ 3

*Van Dongen v. CNinsure Inc.*,
  951 F. Supp. 2d 457 (S.D.N.Y. 2013) .............................................................................. 2-3

*Verghese v. China Shenghou Pharmaceutical Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009) ................................................................................. 4

*Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................................................. 2

Rules

Fed R. Civ. P. 9(b) ..................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1

Defendant Marc Panoff submits this Reply Memorandum of Law in further support of his motion to dismiss the First Amended Consolidated Complaint for Violation of the Federal Securities Laws ("FAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and in response to Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("P. Mem.").

## I. PRELIMINARY STATEMENT

In his moving brief,[1] Panoff made two points: 1) that Plaintiff's FAC does not plead scienter with sufficient particularity to create a "strong inference" and 2) that Plaintiff's claim under § 20(a) of the Exchange Act fails to state a cause of action because it does not allege facts showing that Panoff was a "culpable participant" in the alleged securities fraud violation of others whom he "controlled." Plaintiff tries to respond on the scienter point but cannot cure in a memorandum of law what are fatal defects in a pleading. Plaintiff ignores the second point.

## II. REPLY ARGUMENT

**A. Plaintiff Has Not Alleged That Panoff Had A Personal Motive To Defraud Retrophin's Investors**

In his moving brief, Panoff demonstrated that Plaintiff failed to allege a "motive" to commit securities fraud (Panoff Mem. at 13-14). "Motive" in this context requires that a defendant "benefitted in a concrete and personal way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000).

In response, Plaintiff does not (and cannot) claim that Panoff was the direct beneficiary of any of the transactions underlying the alleged fraud—*i.e.*, the various alleged "related party

---

[1] The Memorandum of Law in Support of Defendant Marc Panoff's Motion to Dismiss (Doc. No. 41), filed June 26, 2015 ("Panoff Mem.").

transactions"[2] or the stock awards, which had been mischaracterized as "inducement grants" (P. Mem. at 5-6).  Nor does Plaintiff challenge the undisputed fact that Panoff did not sell a single share of Retrophin stock during the class period.[3]

Unable to ascribe any "personal" and "concrete" benefit to Panoff from the alleged misstatements and omissions, Plaintiff invokes generalized benefits to the company, like a desire to "comply with and facilitate debt and revolving-loan agreements" (P. Mem. at 14).  This argument, however, is foreclosed by controlling precedent.  (*See* Panoff Mem. at 13, citing *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 267 (2d Cir. 1996), *Kalnit v. Eichler*, 264 F.3d 131-140 (2d Cir. 2001), and *San Leandro Emergency Med. Group. Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996)).  Plaintiff ignores these cases (P. Mem. at ii-vii).

Ironically, the decisions that Plaintiff does cite support Panoff's position.  (P. Mem. at 35-36).  In these cases, courts in this Circuit found that while a general benefit to the company may suffice to show a corporate "motive," the same is not true as to the individual officers and directors, against whom the complaints were then dismissed.  *In re Silvercorp Metals,* 26 F. Supp. 3d 266, 277 (S.D.N.Y. 2014) (no motive pleaded as to individual defendants); *In re Van Der Moolen Holding N.V. Secs. Litig.*, 405 F. Supp. 2d 388, 411 (S.D.N.Y. 2005) (holding only that plaintiffs had adequately pleaded motive as to company); *In re Labranche Secs. Litig*, 405 F. Supp.2d 333, 357 (S.D.N.Y. 2005) (motive to increase share price to make acquisitions sufficient for scienter against company, but not individuals); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 206 (E.D.N.Y. 2000) (motive alleged against company, not individuals).  Plaintiff also cites *Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003), and *Van*

---

[2] The related party transactions were self-disclosed by the Company as the "sham consulting agreements," "settlement agreements," "litigation settlements," and "other obligations" (P. Mem. at 3-4).

[3] In his memorandum of law, Plaintiff details Shkreli's alleged stock sales of "approximately $15 million" (P. Mem. at 9-10), but alleges none by Panoff—because Panoff never sold a share (Panoff Mem. at 13).

*Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 475-76 (S.D.N.Y. 2013), to bootstrap a corporate business objective as indicia of an individual's "motive" to commit fraud. But in both of those cases, the plaintiff also alleged specific financial benefits to some of the executive defendants.

In summary, Plaintiff has not alleged any "personal" and "concrete" benefit to Panoff from the alleged fraud that creates a strong inference that he harbored an "intent to deceive, manipulate, or defraud"[4] Retrophin's investors.

### B. Plaintiff Has Also Failed To Allege Strong Circumstantial Evidence of Conscious Misbehavior

In order to show "conscious misbehavior" or "recklessness," a plaintiff must allege, *for each individual defendant*, the specific information available to the defendant at the time, which revealed the truth of the alleged fraudulent omission or misrepresentation. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap., Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). For example, if a company had publicly disseminated false sales data, a plaintiff could show "recklessness" by identifying a specific sales report, made available to the particular defendant, that contradicted the public data. As to Panoff, Plaintiff makes no such showing.

The main thrust of Plaintiff's argument against Panoff is merely his status as CFO. Panoff was indeed Retrophin's CFO during most of the class period. But his position alone is insufficient to plead securities fraud. *See, e.g., Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.,* 645 F. Supp. 2d 210, 237 (S.D.N.Y. 2009) (dismissing securities fraud complaint in stock option backdating case against CFO, while sustaining cause of action against others who were allegedly directly involved). Plaintiff, nevertheless, scours the case law to find instances where securities fraud claims have survived against CFOs in response to dismissal motions. But in those CFO cases, the plaintiff either pleaded a financial motive to commit fraud by the CFO,

---

[4] *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 192, n.7 (1976).

3

*see, e.g.*, *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) (CFO sold $5 million in stock), or identified a specific report or other source of information available to the CFO that was inconsistent with the company's public statements, *see, e.g., Fraternity Fund Ltd. v. Beacon Hill Asset Mgt.*, 376 F. Supp. 2d 385, 404 (S.D.N.Y. 2005) (CFO had access to "pricing sheet" that showed that net asset value reports, which he supervised, were inaccurate). Here, no comparable allegations are to be found in the FAC.

Plaintiff also cites to supposed "red flags." But a "flag" is red only if it reveals a fact that is inconsistent with the allegedly false public disclosure or omission. *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774–75 (S.D.N.Y. 2006). Here, none of the alleged "flags" meet that basic requirement.

*First,* turning logic on its head, Plaintiff argues that the company's on-going *public* disclosure that a "material weakness" existed with Retrophin's internal controls is a red flag probative of defendants' scienter (P. Mem. at 10-11). As a matter of law, however, "red flags embedded in publicly available documents do not support an inference of scienter." *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 431 (S.D.N.Y. 2014) (citing *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("An inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent.")). Significantly, this is not a case where the misrepresentation itself is about the state of the company's internal controls, as was the situation in *Verghese v. China Shenghou Pharmaceutical Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009) (cited by Plaintiff at P. Mem. at 28). Moreover, a general weakness in Retrophin's internal controls would not have alerted Panoff to the falsity of the company's specific representations and omissions about the settlements, consulting agreements, and stock

4

option grants.  Finally, as Panoff argued in his opening brief—and ignored by Plaintiff—Retrophin was a young, growing company with immature internal controls, making it more likely that disclosure and accounting problems resulted from inadvertence rather than malevolence.  (*See* Panoff Mem. at 16, citing *In re Magnum Hunter Resources Corp. Secs. Litig.*, 26 F. Supp. 3d 278, 297 (S.D.N.Y. 2014)).

*Second*, Plaintiff identifies as a "red flag" the fact that Retrophin paid settlements to "extinguish legal liabilities of MSMB Capital (and indirectly the CEO)" (P. Mem. at 12) and for a time failed to disclose these payments as "related party" transactions.  Yet, if anything, this issue shows Panoff's (and the company's) good faith.  Within months of Panoff's start date, Retrophin voluntarily disclosed and restated its disclosures concerning these settlement payments.  The timing speaks volumes: Panoff started with Retrophin on May 20, 2013.[5]  On June 13, 2013, Retrophin released its Form 10-K for the period ending December 31, 2012 (FAC ¶ 80) and, on July 24, 2013, its 10-Q for the quarter ending March 31, 2013 (FAC ¶ 84).  On September 13, 2013, Retrophin corrected the mistake, and restated its disclosure.  (FAC ¶ 86). This sequence describes conduct that is the antithesis of fraud.

*Third,* ironically, Plaintiff decries as a "red flag" supposed warnings that Shkreli received from the Board "to improve his behavior" (P. Mem. at 13), when plainly that is yet another manifestation of good faith.

*Fourth*, in some cases, the termination of an "outside auditor"—another supposed "red flag"—might raise concerns (P. Mem. at 13).  But pleading the resignation alone is irrelevant to scienter, without additional details showing a dispute with the auditors or evidence that the auditors uncovered improprieties.  *See City of Brockton Retirement Sys. v. Shaw Group*, 540 F.

---

[5] *See* http://ir.retrophin.com/releasedetail.cfm?ReleaseID=770728

Supp. 2d 464, 474-75 (S.D.N.Y. 2008).  No such details are alleged in the FAC.  (FAC ¶¶ 70-71).

*Finally*, under the heading "other red flags," Plaintiff cites supposed actions by "CREW" (Citizens for Responsibility and Ethics in Washington) to drum up an investigation of Shkreli by various governmental organizations, such as the FDA, the SEC, and the U.S. Attorney's office, and various lawsuits.  None of this information is sufficient to support an inference (much less the required strong inference) of scienter.  First, the information was publicly available.  Second, it does not reveal the truth about any of the alleged false statements and omissions in the FAC.  Third, Plaintiff alleges no facts showing that Panoff was even aware of these matters.  *See, e.g.*, *In re Aegon N.V. Sec. Litig.*, No. 03 Civ. 603 (RWS), 2004 WL 1415973, at *17 (S.D.N.Y. June 23, 2004) (holding that mere allegation that "Defendants had access to adverse undisclosed information because of their senior positions with the company" insufficient to establish scienter); *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000).  But even if Panoff were aware, a reasonable person might well take comfort in the lack of formal activity by these governmental entities against Shkreli despite the agitation.

In order for an inference of scienter to be strong, it must be at least as likely as any plausible opposing inferences.  Here, Plaintiff asks the Court to find from the FAC a strong inference of scienter on the part of Panoff based on three groups of alleged misrepresentations or omissions by Retrophin: (a) the settlement agreements; (b) the consulting agreements; and (c) the stock awards.  In trying to meet its burden, Plaintiff fails to identify any specific information that was available to or known by Panoff at the time that revealed the truth of Retrophin's supposed misstatements.  Nor does Plaintiff allege any reason why Panoff would want to deceive investors

as to these matters, none of which benefited him personally. Having failed to carry its burden, the FAC must be dismissed with prejudice as to Panoff.

### III.     CONCLUSION

The FAC does not contain allegations creating a "strong inference" of Panoff's scienter. Nor does it allege his "culpable participation" in any fraudulent conduct. As a result, the FAC must be dismissed with prejudice as against Panoff.

Dated:   New York, New York  
        October 28, 2015

SULLIVAN & WORCESTER LLP

By: /s/Andrew T. Solomon  
    Andrew T. Solomon  
    Paul E. Summit  
1633 Broadway, 32nd Floor  
New York, NY  10019  
(T) 212-660-3000  
(F) 212-660-3001  
asolomon@sandw.com  
psummit@sandw.com

*Attorneys for defendant Marc Panoff*

7