UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
In re RETROPHIN, INC. Securities Litigation,  :

                                    :

THIS DOCUMENT RELATES TO:  :

ALL ACTIONS
                                    :
------------------------------------- X

INDEX No. 1:14-cv-08376-PKC

CLASS ACTION

**CORRECTED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS OF DEFENDANTS RETROPHIN, INC., STEPHEN ASELAGE,
STEVEN RICHARDSON, AND CORNELIUS GOLDING**

Ian Shapiro
Stephanie B. Turner
COOLEY LLP
1114 AVENUE OF THE AMERICAS
NEW YORK, NY 10036
(212) 479-6000

*Attorneys for Defendants Retrophin,
Inc., Stephen Aselage, Steven
Richardson, and Cornelius Golding*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

I.  THE NON-DISCLOSURE OF THE 2013 SETTLEMENT AGREEMENTS CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM ................... 1

II. THE NON-DISCLOSURE OF THE COMPANY'S STOCK GRANT NON-COMPLIANCE CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM ................................................................................................................ 3

    A. Loss Causation ................................................................................................. 3

    B. Falsity ................................................................................................................ 4

    C. Scienter ............................................................................................................. 5

III. THE NON-DISCLOSURE OF SHKRELI'S RELATED-PARTY TRANSACTIONS CANNOT SUPPORT THE PLAINTIFF'S SECURITIES FRAUD CLAIM ................................................................................................................ 6

    A. Loss Causation ................................................................................................. 7

    B. Scienter ............................................................................................................. 9

IV. THE PLAINTIFF CANNOT MAKE OUT A CLAIM UNDER SECTION 20(A) ........ 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alpern v. Utilicorp United, Inc.,
  1994 U.S. Dist. LEXIS 17529 (W.D. Mo. Nov. 14, 1994) .......................................................10

ATSI Communs., Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007) .....................................................................................................10

Belmont v. MB Inv. Partners, Inc.,
  708 F.3d 470 (3d Cir. 2013) ...................................................................................................10

In re JPMorgan Chase & Co. Secs. Litig.,
  2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) ........................................................10

In re Tyco Int'l, Ltd. Multidistrict Litig.,
  2004 U.S. Dist. LEXIS 20733 (D.N.H. 2004) .......................................................................10

**PRELIMINARY STATEMENT**

The initial brief of Defendants Retrophin, Inc. ("Retrophin" or the "Company") and Stephen Aselage, Steven Richardson, and Cornelius Golding (the "Director Defendants") in support of their Motion to Dismiss explained that the First Amended Consolidated Complaint ("FACC") alleged that the Company's public filings were false and misleading as a result of the Company's non-disclosure of three sets of facts:

First, the FACC alleged that the Company's financial statements were false between June 13, 2013 and September 13, 2013 because the Company failed to disclose the 2013 Settlement Agreements.  Second, the FACC alleged that the Company's financial statements and a proxy statement were false and misleading between March 28, 2014 and August 14, 2014 because the Company failed to disclose its Stock Grant Non-Compliance.  Third, the FACC alleged that the Company's financial statements were false and misleading between June 2013 and August 2014 because the Company's failed to disclose the Related-Party Transactions described in the Company's February 20, 2015 Form 8-K.

Defendants' initial brief addressed each of these non-disclosures, explaining why the FACC failed to allege one or more elements of a securities fraud claim against either the Company or the Director Defendants.  In response, the Plaintiff's opposition brief fails to address many of these arguments, and where it addresses them directly, the Plaintiff's response is weak and unconvincing.

**ARGUMENT**

I. **The Non-Disclosure of the 2013 Settlement Agreements Cannot Support the Plaintiff's Securities Fraud Claim**

The only public filing or other statement that the FACC alleged was false or misleading as a result of the non-disclosure of the 2013 Settlement Agreements is the Company's Form 10-K for 2012, which was filed on June 13, 2013.  Thus, the only issue for this Court to decide is

whether the non-disclosure of the 2013 Settlement Agreements from the 2012 Form 10-K was intended to deceive investors.

Based on the Company's prompt correction of its first Form 10-K and the absence of any allegations of conscious misbehavior, Defendants' initial brief contended that the facts alleged in the FACC could only support the inference that a new public company inadvertently failed to disclose these transactions in its very first Form 10-K and promptly corrected its oversight. Id. at 8-9. This inference is especially compelling considering that the Settlement Agreements were executed in 2013, after the period addressed in the 2012 Form 10-K, and only needed to be included because they were executed before the 2012 Form 10-K was filed and thus qualified for inclusion in the "Subsequent Events" footnote. See id. This inference is further corroborated by the fact that the Company's first CFO had been on the job for only two weeks when the Form 10-K was filed, and the Company began correcting its mistake soon after the CFO's hiring. Id.

The Plaintiff's opposition brief does not address any of these arguments. In fact, it only addresses whether the non-disclosure of these 2013 Settlement Agreements was intended to deceive investors once, at the bottom of page 23, where the Plaintiff argues that "[a]s a direct beneficiary of the related-party transactions, Shkreli had actual knowledge of them. That is the hallmark of scienter." Plaintiff's Br. at 23. But Defendants do not dispute that Shkreli knew of the 2013 Settlement Agreements. That is not the issue. The issue is whether the Company failed to disclose the 2013 Settlement Agreements in the 2012 Form 10-K because they intended to deceive investors. On that issue, the Plaintiff has failed to allege any facts or to offer any competing inference.[1]

---

[1] The Plaintiff does not offer any allegations specifically referring to the Director Defendants' scienter in failing to disclose the 2013 Settlement Agreements.

## II. The Non-Disclosure of the Company's Stock Grant Non-Compliance Cannot Support the Plaintiff's Securities Fraud Claim

The Plaintiff's opposition brief also fails to establish that the FACC adequately pleaded loss causation, falsity, or scienter with respect to the non-disclosure of the Company's Stock Grant Non-Compliance.

### A. Loss Causation

Defendants' initial brief explained that "plaintiff must identify an event or corrective disclosure that caused the decline in the stock's value, and establish that the alleged omission concealed the circumstance that caused the value of the stock to decline when that circumstance was ultimately revealed." Defendants' Br. at 10. Defendants' initial brief also explained that the only disclosures alleged in the FACC which revealed the Stock Grant Non-Compliance were (i) the Bloomberg article published on October 2, 2014 and (ii) the Company's Form 8-K filed on December 15, 2014. Id. But neither disclosure caused a decline in the value of the Company's stock, and therefore, neither can establish loss causation. Id.

Defendants' initial brief also took the position that "[n]one of the other disclosures alleged in paragraphs 118 to 146 of the FACC are sufficient to establish loss causation," because "[e]ither they failed to reveal the substance of the Company's Stock Grant Non-compliance," or "they did not cause the value of the Company's stock to decline." Id. at 12. This argument was an express invitation to the Plaintiff to explain how any of the other disclosures alleged in the FACC both exposed the substance of the Company's Stock Grant Non-Compliance and caused the value of the Company's stock to decline.

Yet, in ten pages of argument on loss causation, the Plaintiff devoted only one sentence to identifying a disclosure that purportedly revealed the substance of the Stock Grant Non-Compliance and caused the value of the Company's stock to decline. The Plaintiff contends that "news reports in the days that followed (October 1st, 2nd, and 6th) revealed that the reasons for

Shkreli's termination related, in part, to the fraud the Plaintiff alleges—grants of Retrophin Common Stock without shareholder approval, failures to disclose stock-related grants, stock-related grants exceeding Plan limits, illicit insider trading, fiduciary-duty violations, and other alleged securities violations." Plaintiff's Br. at 47. In support of this contention, Plaintiff's opposition brief cites paragraphs 121, 132, and 134 of the FACC. But none of those paragraphs alleged a disclosure that both revealed the substance of the Stock Grant Non-Compliance and caused the value of the Company's stock to decline.

Paragraph 131 of the FACC described a Bloomberg article dated October 1, 2014. This article was not a corrective disclosure because it did not reveal anything about the Company's Stock Grant Non-Compliance. Moreover, it did not cause the value of the Company's stock to decline. Paragraph 132 described another Bloomberg article dated October 2, 2014. This article <u>did</u> reveal the substance of the Company's Stock Grant Non-Compliance, but it <u>did not</u> cause the value of the Company's stock to decline. The Company's stock price rose the following day. Defendants' Br. at 11. Finally, paragraph 134 described a Seeking Alpha article dated October 6, 2014. This article could not have been a corrective disclosure because it did not reveal anything about the Stock Grant Non-Compliance.

Neither the FACC nor the opposition brief has identified any disclosure that both revealed the substance of the Stock Grant Non-Compliance and caused the Company's stock price to decline. Therefore, Plaintiff has not—and will never be able to—establish loss causation with respect to the alleged non-disclosure of the Company's Stock Grant Non-Compliance.

**B.     Falsity**

Defendants' initial brief contended that the FACC failed to establish falsity with respect to the Stock Grant Non-Compliance because it did not identify any statements that were rendered false or misleading as a result of the non-disclosure of the Stock Grant Non-Compliance. <u>See</u>

Defendants' Br. at 12-15.  In particular, Defendants' initial brief reviewed each of the statements that the FACC alleged was rendered false and misleading by the Company's Stock Grant Non-Compliance and explained why none of them was false or misleading.  Id.  The Plaintiff's opposition brief does not address any of these arguments, effectively conceding that none of the statements identified in the FACC were rendered false or misleading by the non-disclosure of the Stock Grant Non-Compliance.

Instead, the opposition brief identifies a new statement that the Plaintiff contends was rendered false or misleading.  The Plaintiff contends that the Company's description of its Incentive Compensation Plan in its 2014 Definitive Proxy Statement included the "implicit" representation that the Company was following the Plan, and the Company's Stock Grant Non-Compliance rendered that "implicit" representation false.  Plaintiff's Br. at 20.  But, as the Plaintiff concedes, this "implicit" representation cannot be found in the Proxy Statement and was not alleged in the FACC.  Therefore, it cannot support a claim for securities fraud.

      **C.**     **Scienter**

Even if it were possible to plead securities fraud based on an "implicit" representation that was not alleged in the FACC, the Plaintiff's claim must be dismissed because the Plaintiff has failed to allege that the Company's failure to disclose its Stock Grant Non-Compliance was intended to deceive investors.

Defendants' initial brief contended that the only reasonable inference is that the non-disclosure of the Company's Stock Grant Non-Compliance was inadvertent.  See Defendants' Br. at 16-17.  Defendants supported this inference by explaining that the Company's period of non-compliance was brief (February to August 2014) and followed the Company's uplisting to NASDAQ, when it had to incorporate all of the new NASDAQ regulations at the same time, including Rule 5635(c).  Id.  Defendants' initial brief also highlighted the fact that the Company

accurately reported the aggregate value and number of these grants in the Company's financial statements during the brief period of non-compliance.  Id.  The Plaintiff's argument that the Company intended to conceal these grants from its investors cannot be reconciled with the fact that the Company completely and accurately disclosed these grants in the financial statements.

The FACC's only allegations addressing the Company's Stock Grant Non-Compliance are set forth in paragraphs 148 and 149.  Those paragraphs alleged that Shkreli knew of the grants and that the Director Defendants who were members of the Compensation Committee "had a duty to pay special attention" them.  ¶ 147.  But the issue is not whether Shkreli or the Director Defendants knew of the grants themselves.  Defendants' Br. at 16.  The only issue is whether the FACC alleged that any Defendants knew that the grants violated Rule 5635(c)(4), consciously disregarded the rule's requirements, and then intentionally concealed the Company's non-compliance.  Id.  On this issue the FACC was silent—and nothing in the Plaintiff's opposition brief addresses this defect in the FACC.[2]  Therefore, Count One of the FACC should be dismissed against the Director Defendants and Retrophin to the extent it is based on the non-disclosure of the Company's Stock Grant Non-Compliance.

### III. The Non-Disclosure of Shkreli's Related-Party Transactions Cannot Support the Plaintiff's Securities Fraud Claim

The Plaintiff has also failed to adequately plead loss causation or scienter with respect to the non-disclosure of Shkreli's Related-Party Transactions.

---

[2] Rather than defending its only two allegations relating to the Company's Stock Grant Non-Compliance, the Plaintiff's opposition brief offers a series of new allegations that were not included in the FACC.  Specifically, the Plaintiff's opposition brief contends that the Company's Stock Grant Non-Compliance was due to the fact that the grants did not qualify as "inducement awards," and that this fact should have been obvious to Defendants.  Plaintiff's Br. at 34.  This new argument fails because the FACC did not allege any of the facts on which it is based.  In particular, the FACC failed to allege any facts that would enable the Court to determine why the stock grants were non-compliant and whether it had anything to do with the requirements for inducement awards.  In fact, when the Company disclosed its Stock Grant Non-Compliance on December 15, 2014, the Company reported that NASDAQ had determined that the grants "did not satisfy all of the criteria to qualify as Inducement Awards."  Declaration of Ian Shapiro in Support of Defendants' Motion to Dismiss the First Amended Consolidated Complaint ("Shapiro Decl."), Ex. E (emphasis added).  Thus, even if it were true that the Company's non-compliance related to the criteria for inducement awards, there is no basis for inferring why the grants were non-compliant, or that Defendants should have known the basis for the Company's non-compliance.

### A. Loss Causation

Defendants' initial brief argued that "[t]he FACC concedes that Shkreli's Related-Party Transactions were not revealed to the market until the February 20, 2015 Form 8-K, and this concession alone should be sufficient to find that the FACC fails to establish loss causation." Defendant's Br. at 18. The Plaintiff's opposition brief never addresses that argument, and it should be dispositive of whether the FACC adequately pleaded loss causation with respect to Shkreli's Related-Party Transactions. The value of the Company's stock price rose after the Related-Party Transactions were first revealed to the market on February 20, 2015, see Shapiro Decl., Ex. T, and therefore, neither the Form 8-K nor any other disclosure could be a corrective disclosure of that circumstance.

Furthermore, even if the Plaintiff had not admitted that the February 20 Form 8-K was the earliest disclosure of Shkreli's Related-Party Transactions, the FACC would still fail to establish loss causation because none of the disclosures alleged in paragraphs 118 to 146 of the FACC both revealed the substance of Shkreli's Related-Party Transactions and caused the value of the Company's stock to decline. Defendants' initial brief addressed each disclosure in the FACC and explained in detail why it was not a corrective disclosure with respect to Shkreli's Related-Party Transactions. See Defendants' Br. at 18-23. This exercise was also an invitation to the Plaintiff to respond by explaining which disclosures, if any, both revealed the substance of Shkreli's Related-Party Transactions and caused the value of the Company's stock to decline. Yet, Plaintiff's opposition brief seeks to defend only four of the alleged disclosures, and only in the most conclusory and unconvincing way.

Two of those four disclosures are addressed on page 44, where the Plaintiff seeks to defend the May 28, 2014 and October 6, 2014 Seeking Alpha articles as corrective disclosures of Shkreli's Related-Party Transactions. In response to Defendants' argument that the allegedly

corrective information in the May 28, 2014 Seeking Alpha article had already been disclosed in the Company's public filings, the Plaintiff argues:

> Whether the revelations in either the May 28, 2014 or October 6, 2014 Seeking Alpha articles were partially based on earlier public information does not disable Plaintiff from relying on either for loss causation. <u>Both the May 28, 2015 and October 6, 2014 Seeking Alpha articles revealed additional information about the subject matter of the fraud that Plaintiff alleges here can be relied on as partial truth revelations</u>.

Plaintiff's Brief at 44 (emphasis added). But that contention is demonstrably false. In the case of the May 28, 2014 Seeking Alpha article, the excerpts the FACC cited expressly refer to information that the Company had already disclosed in its 2012 Form 10-K/A and 2013 Form 10-K. This information had already been absorbed by the market when disclosed in the Company's financial statements, and thus could not have caused the decline in the value of the Company's stock following publication of the article.[3]

The Plaintiff's opposition brief also seeks to defend the October 6, 2014 Seeking Alpha article on the ground that it "revealed additional information about the subject matter of [Shkreli's Related-Party Transactions]." Plaintiff's Br. at 44. But that article does not reveal anything about the Related-Party Transactions, and Plaintiff's opposition brief has not identified any information in the article that revealed anything about those transactions.

Subsequently, on page 47, the Plaintiff seeks to defend the Company's disclosure of the resignation of Panoff and Paley on September 16, 2014 and the replacement of Shkreli as CEO on September 30, 2014 as corrective disclosures. The Plaintiff's opposition brief argues:

> Shkreli's termination, and the other officer/director departures, represented materialization of the risks that had been previously undisclosed. By all accounts, Shkreli's departure was directly tied to his previously undisclosed improper conduct. Thus, these disclosures fell within the "zone of risk" concealed by Defendants' omission of [the stock option grants] and related party deals . . . .

---

[3] The Seeking Alpha article even cites the specific pages of the 2012 Form 10-K/A and the 2013 Form 10-K where this information had already been disclosed. <u>See</u> Shapiro Decl., Exs. B, C & Q.

Plaintiff's Br. at 47-48. There is a reason the Plaintiff's argument on these two alleged disclosures is so vague and non-specific. The Plaintiff cannot tie either of these disclosures to Shkreli's Related-Party Transactions.

The Plaintiff contends that unidentified "accounts" of Shkreli's departure "directly" tie his departure to the Related-Party Transactions. But the FACC did not identify any "accounts," no such accounts exist, and the FACC failed to allege that the Company even knew of Shkreli's Related-Party Transactions in September 2014 when it decided to replace him as CEO.[4]

## B. Scienter

The Plaintiff has also failed to show that the Company or any of the Director Defendants intended to deceive investors with respect to Shkreli's Related-Party Transactions.[5] Defendants' initial brief explained that "[t]he only allegations of scienter in the FACC relating to Shkreli's Related-Party Transactions relate to Shkreli individually." Defendants' Br. at 23. The initial brief further explained that "[w]hile the Company does not concede that these allegations are sufficient to establish Shkreli's scienter, in either case, his scienter should not be imputed to the Company" because he was an adverse agent. Id. at 23-24.

The Plaintiff's opposition brief asserts that the adverse interest exception to imputation does not apply here because "Retrophin derived some benefit from the stock grants." Plaintiff's Br. at 40. But Defendants' initial brief contended that Shkreli was an adverse agent only with respect to the Related-Party Transactions, not with respect to the Company's Stock Grant Non-

---

[4] Recognizing that the disclosure of these departures did not reveal anything about the Related-Party Transactions, the Plaintiff also contends that the departures represented the materialization of a risk that was concealed by the non-disclosure of Related-Party Transactions. But the FACC never identified any risk or how such risk was concealed by the non-disclosure of the Related-Party Transactions, nor does it say anything about how the departures were the manifestation of that risk. In fact, the FACC lacked any allegations about how these departures represented the materialization of any risk. Accordingly, the Plaintiff cannot establish loss causation on this basis.

[5] As Defendants explained in their initial brief, "[t]he FACC does not include a single allegation that any of the Director Defendants consciously failed to disclose Shkreli's Related-Party Transactions," nor does the it allege that the Director Defendants acted recklessly. Defendants' Br. at 23. The Plaintiff's response—that the Director Defendants were put on notice by certain "red flags"—is unavailing because the Plaintiff does not explain how any of these alleged "red flags" related to Shkreli's Related-Party Transactions.

Compliance. By failing to identify any benefit conveyed to the Company through Shkreli's Related-Party Transactions, the Plaintiff effectively concedes that Shkreli was acting as an adverse agent in that context.[6] For these reasons, Count One should be dismissed as to the Director Defendants and Retrophin with respect to the non-disclosure of Shkreli's Related-Party Transactions.

## IV. The Plaintiff Cannot Make Out a Claim under Section 20(a)

As set forth above, the Plaintiff has not plead that either the Company or the Director Defendants committed a primary securities violation under Section 10(b) or Rule 10b-5. Therefore, the Plaintiff cannot make out a claim that the Director Defendants are liable for the Company's alleged omissions as controlling persons under Section 20(a) of the Exchange Act, and Count Two of the FACC should also be dismissed. See ATSI Communs., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007) (affirming dismissal of controlling person claim where the plaintiff failed to adequately allege a primary violation).

## CONCLUSION

For the foregoing reasons, the FACC should be dismissed as to Retrophin and the Director Defendants.

---

[6] The Plaintiff also argues that the adverse interest exception "does not apply in the securities context when innocent third parties are involved." Id. at 38. But that is not supported by the cases cited by Plaintiff. Those cases all involve instances in which the agent acted with apparent authority—i.e., "while he was working for [the company], and for the apparent benefit to [the company]"—and they stand for the proposition that where an agent is, or merely appears to be, acting for his principal's benefit in defrauding an innocent third party, the adverse interest exception does not always bar imputation. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 497 (3d Cir. 2013) (emphasis added). See also In re Tyco Int'l, Ltd. Multidistrict Litig., 2004 U.S. Dist. LEXIS 20733, *18 (D.N.H. 2004) (adverse interest exception did not apply on motion to dismiss because plaintiff's complaint could "fairly be read to charge that the [agent's] looting was part of a larger scheme" to benefit the company and inflate its stock). In contrast, where there is no allegation that the agent acted or appeared to act for the benefit of his principal, the adverse interest exception clearly applies, including in the securities fraud context. See, e.g., In re JPMorgan Chase & Co. Secs. Litig., 2007 U.S. Dist. LEXIS 93877 (N.D. Ill. Dec. 18, 2007) (dismissing Section 10(b) claim and applying adverse interest exception where allegedly adverse agent made a material misstatement to a third party); Alpern v. Utilicorp United, Inc., 1994 U.S. Dist. LEXIS 17529, *12 (W.D. Mo. Nov. 14, 1994) (same). Neither the FACC nor the Plaintiff's opposition brief contains any allegations that Shkreli was acting for the Company's benefit with respect to the Related-Party Transactions, and to the contrary, the FACC specifically alleges that the Related-Party Transactions were "designed to personally benefit Shkreli." See ¶ 5.


| | |
|---|---|
| New York, NY<br>Dated: October 28, 2015 | Respectfully submitted,<br><br>COOLEY LLP<br>1114 Avenue of the Americas<br>New York, NY 10036<br>(212) 479-6900<br><br>By: */s/ Ian Shapiro*<br>　　　Ian Shapiro (IRS-5120) |